# HARRY B. STEVENS *v.* DAVID D. PILLSBURY AND OTHERS.

## [In Chancery.]

*Conditional Deed, Breach of, Forfeiture.   Damages.   Penalty. Good Will.   Appurtenance.   Waiver.*

1.  B. owned two hotels—the Trotter House and the Bliss hotel—in the same village, and sold the Trotter House to the orator for $4,250, and at the same time, and as part of the same contract, for the consideration of $2,500, paid him by the orator, agreed that the Bliss hotel should never be used for hotel and boarding-house purposes; and as security for this inhibition, conveyed the Bliss hotel to the orator by deed with covenants of warranty, conditioned that the deed was to be void if the restraint was observed, otherwise in force.  After several years the orator went out of the hotel business, and conveyed his hotel, but not his interest under the conditional deed.  B., observing the condition so long as he was the owner of the Bliss hotel, after a few years sold it in parcels; and the several defendants became the owners thereof.  Large improvements had been made on the property.  There was a clear breach of the condition; but some of the defendants were innocent as to this, and some not.   A bill having been brought for a forfeiture of the premises;  *Held,* that equity did not require an enforcement of the conditional deed; but that the orator ought to be made whole, and so should recover the $2,500—what he paid for the immunity—and interest from the time he demanded the premises.
2.  DAMAGES.  The orator is not confined to such damages as he personally sustained in the hotel business.
3.  WAIVER.  He waived the right to recover interest prior to the time of the demand, by not making a demand sooner, although the breaches were of a much earlier date.
4.  APPURTENANCE.  The immunity secured by the conditional deed was not an appurtenance to the Trotter House.
5.  Keeping boarders by one occupying a portion of the inhibited premises, also furnishing oysters, cooked and raw, pies, cake, &c., to travellers, was a breach of the condition; but keeping or entertaining of one's friends is not such breach.

BILL IN CHANCERY.   Heard on bill, answer, and testimony, Orange County, December Term, 1881, POWERS, Chancellor. Bill dismissed.

*John H. Watson,* for the orator.

The orator seeks to have the real estate decreed to him by reason of the breaches of the condition in the Bliss deed.

He paid $3,000 for the good will of the Bliss hotel. There was a material breach of the condition. If a breach, what are the consequences? a forfeiture, or damages?—clearly a forfeiture of the whole Bliss hotel property. The condition was a precedent condition. 4 Kent Com. 135, 138, *n.*; 1 Wash. R. P. c. 14, s. 2; 2 Jar. Wills, 2, 4. A Court of Chancery cannot grant relief from the consequences of a condition precedent unperformed. 2 Story Eq. s. 1324; Ad. Eq. 242; 1 Smith Lead. Cas. 102; *Wells* v. *Smith*, 2 Edw. Ch. 78; 25 Ala. 451; 15 Vt. 757. Nor will the court relieve when there is no certain rule to measure the damages. 1 Wash. R. P. c. 14, s. 22; 2 Story Eq. *supra*. Here the damages are *continuing;* and hence cannot be assessed. But if the court say that it is a proper case for the assessment of damages, then we say that the damages were liquidated by the parties; and that the orator should recover what the Bliss hotel premises were worth when the deed was executed. The inhibition upon the Bliss hotel was not an incident to the Trotter House, and of course did not pass by the orator's deed of that property. 1 Smith Lead. Cas. 100, 121, 150; *Gray* v. *Blanchard*, 8 Pick. 284; Wash. Ease. 49; 15 E. C. L. 77; 34 Beav. 576; *Eastman* v. *Batchelder*, 36 N. H. 141; *Page* v. *Olcott*, 28 Vt. 465; *Smith* v. *Bartholomew*, 42 Vt. 356; *Cannon* v. *Norton*, 14 Vt. 178.

*Farnham & Chamberlin*, for the defendants.

The defendants deny the breaches; and if some of the acts charged as such are proved, they claim that they do not amount to breaches of the condition in the deed.

And they further say that if the orator should succeed in proving all that he attempts to prove, that the breaches even then would not work a forfeiture of the property, but should only be considered in the light of damages to be compensated in money after the amount of them is ascertained.

The defendants also claim that a large portion of the so-called breaches occurred when the orator was not running

the Trotter House, and consequently it could be no damage to him. They were committed either while he had leased it, or after he had sold it.

Whatever the orator acquired by the conditional deed, it was an appurtenance of the Trotter House; and when he conveyed that hotel with "all the privileges and appurtenances," he conveyed all the interest that he had in the Bliss property. *Thompson* v. *Banks*, 43 N. H. 5, 40; *Seavey* v. *Jones*, Ib. 441; *Coolidge* v. *Hager*, 43 Vt. 9; *Sampson* v. *Easterly*, 9 Barn. & Cr. 505; 4 Kent Com. 468; *U. S.* v. *Appleton*, 1 Sumn. 492; *Ougley* v. *Chambers*, 8 E. C. L. 604; *Factory* v. *Batchelder*, 3 N. H. 190; *Jones* v. *Jenkins*, 34 Md. 1; *Simons* v. *Cloonan*, 81 N. Y. 557; 1 Smith Lead. Cas. (5 Am. Ed.) 120. There ought to be no forfeiture; at most only damages can be recovered, and these in money, and should be limited to actual damages. *Henry* v. *Tupper*, 29 Vt. 358; *Weeks* v. *Boynton*, 37 Vt. 302; *Austin* v. *Austin*, 9 Vt. 420; *Copper Mining Co.* v. *Ormsby*, 47 Vt. 713; *Livingston* v. *Tompkins*, 4 Johns. Ch. 415; *Smith* v. *Jewell*, 40 N. H. 530; 7 Cranch, 347; *Speer* v. *Smith*, 1 Denio, 465; *Shiel* v. *McNitt*, 9 Paige, 401; *Smith* v. *Wainwright*, 24 Vt. 98; 3 Lead. Cas. Eq. 475, 675; 18 Barb. 50.

The opinion of the court was delivered by

Ross, J. January 1, 1855, the orator purchased and took a deed of the Trotter House property, in Bradford, from Ellis Bliss, for the expressed consideration of $6,750. He paid Bliss that amount. Bliss had for a number of years been keeping a hotel on premises adjoining the Trotter House property, known as the Bliss hotel property. He had purchased the Trotter House property the March previous for about $3,600, and laid out about $400 in making repairs. As an inducement to the orator to purchase the Trotter House property and pay the price asked, he agreed to close and keep forever closed his own hotel property, for hotel, boarding-house, and

livery-stable purposes. The orator would not purchase the Trotter House property unless be could be secured from competition in the hotel and livery business upon the Bliss hotel property, nor unless he could be effectually secured against such competition by a conveyance of the Bliss hotel property. On the same day he received the conveyance of the Trotter House property, the orator took from Bliss a conveyance by deed, with the usual covenants of warranty, of the Bliss hotel property, containing the following condition:

"Yet the condition of this deed is such, that if I, the said Ellis Bliss, my heirs, executors, administrators, and assigns do and shall hereafter keep and hold the above premises free and clear from all the purposes of a hotel, tavern, inn, or boarding-house; also, from all the purposes of livery or livery stabling, as well the buildings that now are erected thereon, as any and all which shall hereafter be erected thereon, so long as wood grows and water runs, truly and faithfully as to the said Harry B. Stevens, his heirs, executors, administrators, and assigns, then and in that case, this deed is to be null and void, otherwise in full force and effect."

From the evidence, which does not much conflict, we find that the orator paid $2,500 for this last conveyance, though the consideration named in the deed is $4,000; and the Bliss hotel property was then worth $3,000 or more. Bliss observed the condition during the time he owned the property, but within a few years sold it in parcels, which, at the time of bringing this bill, were owned by the several defendants. It had been built upon, so that, it is agreed, it was then worth $12,000. The bill was served May 23, 1872. The orator, in the bill, sets forth the two purchases and conveyances from Bliss, and alleges that there have been breaches of the condition by several of the subsequent grantees or their tenants, and prays that the land and premises be declared forfeited to the orator, and for an accounting for the rents and profits; and "for such other and further relief in the premises as the nature and circumstances of the case

may require." Just previously to bringing the bill, the orator in writing notified the defendants of the claimed breaches of the condition and demanded the premises. The defendants by answer deny that there have been any breaches of the condition, and aver that if there has been a technical breach thereof, the orator should not be allowed to wrest from them the premises worth many thousand dollars more than when the deed was given. In 1870 the orator had given a similar verbal notice to the then owners of the property, and brought a suit in ejectment for the recovery of the premises. On the case coming on for trial, and upon the statements of the respective attorneys, Judge PECK continued the case, suggesting that from the statement of the defendants' attorney, he thought there had been a technical forfeiture of the premises, but that equity would probably grant relief by way of compensation. The defendants not moving to bring a bill, the orator brought this bill, and discontinued the ejectment suit. The orator leased the Trotter House property, except the livery stable, for two years and a half, commencing April 1, 1861, and sold and conveyed them May 6, 1867. The purchaser refused to buy from the orator the rights secured to him by the deed of the Bliss hotel property. Henry B. Kennedy occupied a portion of the Bliss hotel property in 1868, 1869, and 1870, and kept more or less boarders during that time. His receipts from this source were about $800. This was a clear breach of the language of the condition. From about 1861, to the time of bringing the ejectment suit, a portion of the Bliss hotel property was occupied by Merrill G. Beard and others, for an express office, grocery, and eating saloon. They furnished oysters, cooked and raw, pies, cheese, &c., to persons who might call for the same, mostly to people who came to the village to do business from the surrounding country. There were fitted up in one side of the room several stalls where meals of this kind were furnished and eaten. Cooked meats were not

furnished to any considerable extent. But quite a business was done by way of feeding teamsters and others, who were stopping in the village for a short time. We think this was also a breach of the condition of the deed. It is one of the purposes of a hotel, tavern, or inn, to furnish meals for that class of persons. If they obtained a meal of oysters, pie, cake, and cheese, at the eating saloon, it was serving to them one of the purposes of a hotel, tavern, or inn. The language of the condition is very comprehensive, and was intended to cover every case which would tend to withdraw custom from the Trotter House. It forbids any use of the Bliss hotel property which would have such a tendency. A valuable consideration was paid for the conditional deed; and the condition should be fairly and reasonably construed to effectuate the intention of the parties to it, which was to inhibit any use of the Bliss hotel property, which would infringe upon the purposes for which the orator was keeping the Trotter House, one of the most prominent of which was furnishing meals for persons who were temporarily in the village. We do not think that the proof clearly establishes that Bagley C. Currier made such a use of the barn of the Bliss hotel property as was a breach of the condition. Most of the testimony is reconcilable with a use of the barn for the friends and acquaintances of said Currier to hitch their teams in—such a use as any private person makes of his barn. Nor do we think that the keeping of his sons-in-law and their wives and children by Jonathan H. Robinson, on the premises, was a breach of the condition. These sons-in-law and their wives and children were not boarders in the ordinary meaning of that word, but a part of the family. They contributed as they felt disposed, to the support of the family, but did not regard themselves, nor did Mr. Robinson and his wife regard them as boarders. Mr. Williams' occupation of the barn for keeping his own horses, and horses that he was training, was not an infringement of the condition in regard to livery or livery stabling.

I.   But admitting these facts, the defendants contend that the orator has no right to recover for any breaches while Witt & Fabyan were keeping the Trotter House, nor since the orator sold in 1867.   They contend that the immunity secured by the conditional deed was a privilege or appurtenance of the Trotter House, and passed to the purchaser under his deed, although he refused to buy the same.   We do not think that this contention can be sustained.   A privilege or appurtenance to a grant is that which is so connected with, and necessary to, the thing granted, that without it the grant itself would not have full effect, according to the maxim, *Cuicunque aliquis quid concedit concedere videtur et id sine quo res ipsa esse non potuit.* Examples are windows, doors, &c., of a building, though temporarily removed, at the time of the conveyance; a right of way over the grantor's land, which wholly surrounds the land conveyed; a visible, plainly marked way in use in connection with the premises conveyed; or a stream of water running to and supplying the premises conveyed, &c. 1 Wash. R. P. pp. 622, 623.

The inhibition, upon the use of the Bliss hotel property for hotel and livery purposes, was not necessary to the reasonable enjoyment of the Trotter House property for such purposes.   It was not necessarily, nor visibly connected with the use of the latter for such purposes.   It might make them more valuable, but not more so than it would any other premises properly fitted up and suitably located in the village of Bradford.   The inhibition was not peculiar, nor necessary to the use of the Trotter House property for such purposes.   Although Bliss owned both premises at the time he conveyed the Trotter House property to the orator, it would not be seriously contended that that conveyance carried with it an inhibition upon the use of the Bliss hotel property for hotel and livery purposes. If it were a privilege or appurtenance of the Trotter House property, it would pass with it upon a conveyance thereof.

The conveyance of the Bliss hotel property was a conditional grant thereof to the orator. Adjacent real estate does not pass as appurtenant to the estate described and granted in the conveyance. Wash. R. P. p. 623. Moreover, the grant, *habendum*, and condition of the deed are to the orator, his heirs, executors, administrators, and assigns. Neither principle, nor the rules of construction, which are but formulæ to ascertain the intention of the parties, will allow the conditional estate created by the deed of the Bliss hotel property to pass as a privilege or appurtenance to the Trotter House property.

II. The defendants also contend that, admitting the breaches of the condition, the orator can only recover such damages as he can show that he has personally sustained in the business of hotel and livery-stable keeping by reason thereof. By the deed the orator and Bliss made a breach of the condition of the deed, the contingency upon which the grant was to take effect. It is hardly correct to say that a breach of the condition worked a forfeiture of the Bliss hotel property. Bliss for himself, his heirs, executors, administrators, and assigns, by the deed solemnly contracted with the orator, his heirs, &c., that upon a breach of the condition the orator's right to the described premises should become absolute. For this grant to become absolute upon the happening of the contingency named in the condition, the orator paid a large consideration. It would effectuate the intention of neither party to the deed, to hold that the orator could only recover such damages as he could show that he had suffered by breaches of the condition. It would in effect be making a contract for the parties thereto, rather than enforcing the one they have made. It is a case where the parties to the contract have by a solemn instrument declared what the effect of a breach thereof shall be. They have for themselves determined what the orator, his heirs, &c., shall recover for such breaches. They have thereby liquidated the damages for such breaches. While it is true,

that forfeitures, as such, are odious, both at law and in equity, and are never declared and enforced in equity; and while there is much learning and many distinctions as to when a sum agreed upon as damages for the breach of a contract by the parties thereto, shall be treated as a penalty or security for the payment of the damages occasioned by such breach, and when as liquidated damages; and while the decisions upon the subject may not all be capable of being harmonized, it is now well settled that the intention of the parties, when ascertained, is to control. It is justly held that where the sum named in the obligation as the measure of damages for a breach, is unreasonably large; or where it is agreed upon to cover usurious interest; or where it is evidently security for the payment of a smaller sum, that the sum named in the obligation will be treated as' a penalty. But where neither of the foregoing is apparent from the contract viewed in the light of surrounding circumstances, where the party may elect to do or not do as contracted and in default to pay a certain sum, and especially where the damages occasioned by the breach are difficult of ascertainment, and the rules for measuring them are uncertain, or of difficult application, it will be held that the damages agreed upon are liquidated. Wood Mayne Dam. c. 8, pp. 198 to 213; 2 Sedg. Dam. pp. 209 to 264; 29 Moak's Eng. Rep. pp. 206 to 211; *Williams* v. *Vance*, 30 Am. R. 26, and note reviewing cases on this subject.

It has rarely been held that, in a contract by which a party has agreed to refrain from exercising a particular trade or profession within a named locality, and agreed upon the sum to be paid if he breaks his agreement, that the sum thus agreed upon has been held other than liquidated damages. In addition to the authorities last cited, *see* also, *Barry* v. *Harris*, 49 Vt. 392; *Butler* v. *Burleson*, 16 Vt. 176; *Dakin* v. *Williams*, 17 Wend. 447; cases cited in note 3, sec. 170, Wood Mayne Dam.; *Williams* v. *Dakin*, 22 Wend. 201; *Leary* v. *Laflin*, 101 Mass. 334; *Pierce* v. *Fuller*,

8 Mass. 102; *Cushing* v. *Drew*, 97 Mass. 445; *Sainter* v. *Furguson*, 62 E. C. L. 716; *Galsworthy* v. *Strutt*, 1 Exch. 659.

One of the principal reasons for so holding is, that there is no definite measure for the damages occasioned by the breach of such a contract, and they are very difficult of proof. The case at bar well illustrates the difficulty. There was another hotel in Bradford besides the Trotter House. How could the orator prove that the parties boarded by Kennedy, or fed at Beard's eating saloon, would have been patrons of the Trotter House except for such boarding or such feeding? and if they would have been such patrons, how much would have been the profits? They might have patronized the other hotel or another boarding-house. While it is thus difficult to prove the actual damages sustained by the breaches shown, all the evidence is to the effect that two equally well kept and commodious hotels on the two properties would render both properties valueless as hotels. The profits to be derived from the custom obtainable by each would no more than pay running expenses, while if all the custom is given to one of them the profits are fairly remunerative. Neither is it reasonable to hold that the orator would pay Bliss $2,500 for his agreement to hold the Bliss hotel property free from such uses, under an agreement expressed or implied, that he was to keep watch for breaches of the agreement, and that an action arose for the recovery of a shilling's profit, for every meal of victuals Bliss thereafter sold to a traveller on the inhibited premises. Besides such holding and such construction would in effect nullify the deed of the Bliss hotel property. If the orator had not purchased the Trotter House property, and had not in it, nor in any other premises in Bradford, gone into the hotel business, he might lawfully have entered into the contract with Bliss, that he did, in regard to the use to which the Bliss hotel property should thereafter be put, and in regard to the results that should follow the breach of the contract. He might have had various reasons for desir-

ing such inhibition,—such as a private residence near by, or land on which he desired to have private residences erected. We think that it is quite clear upon authority and principle, that if Bliss himself had, soon after his deed of the Bliss hotel property, violated the conditions of the deed, it would have been the duty of this court to enforce the deed, or to turn the orator over to an action at law, to recover possession of the premises.

III. But since making the deed the Bliss hotel property has been divided by various conveyances, and has by some of the grantees been greatly improved by the erection of valuable buildings; and several of these grantees have carefully kept and used the premises owned and occupied by them free from the inhibited uses. The orator, too, has sold the Trotter House property, and gone out of the hotel business. Under these circumstances, inasmuch as the orator has come into a court of equity, thereby offering to do equity, we think it would be inequitable not to relieve the owners of those portions of the Bliss hotel property, who are innocent of any breach of the condition of the deed, from an entire loss of the improvements and enhanced value of the property. But, the damages being liquidated between the parties to that deed, only one recovery can be had for a breach of the conditions of the deed. Hence the orator should be, at least, made whole in relieving the defendants from a full enforcement of the deed. We think the orator will be made whole by the payment of the sum he paid for the deed—$2,500—and interest since he demanded the premises at the time he brought this bill. Although the first breaches were of a much earlier date, and continued to the time of the demand, they were of such a nature that they could be waived, or not insisted upon by the orator. We treat his failure to make a demand earlier an election by him not to insist earlier upon an enforcement of his rights under the deed. Generally in such a case the sum in equity to be recovered to compensate for the non-

enforcement of the deed would be the value of the premises without the improvements put on by innocent parties. It would be somewhat difficult to fix upon such value in the present case, and the sum paid by him for the deed with interest under the circumstances fairly compensates the orator, and is very nearly the unimproved value of the premises at the time of the demand. The decree of the Court of Chancery is reversed and the cause remanded with a mandate to render a decree, that, to be relieved from the deed of January 1, 1855, the defendants pay to the orator within such time as shall be determined by the Court of Chancery, $2,500, with interest since May 23, 1872, and costs; and on their failure to make payment the defendants to be foreclosed of all equities in said premises.