ISAAC S. BORLEY *vs.* JAMES McDONALD.

January Term, 1897.

Present: TAFT, ROWELL, TYLER, MUNSON and START, JJ.

*Contract not to Compete—Liquidated Damages—Evidence to Vary Contract.*

The defendant contracted with the plaintiff not to compete with him in certain business. *Held*, that the contract was broken when his partners, acting in the line of the partnership business, competed.

The contract being in writing and unequivocal, it was not competent for the defendant to prove that at the time of its execution the plaintiff understood it in a sense more favorable to the defendant than its legal effect.

The contract clearly providing for liquidated damages, it was not competent for the defendant to prove that at the time of its execution both parties understood that only actual damages could be recovered.

It was a clear case of liquidated damages, the sum provided for being so named and reasonable, while the actual damages would have been difficult or impossible to ascertain.

ASSUMPSIT. Heard upon the report of a referee and exceptions thereto at the September Term, 1896, Franklin County, *Ross*, C. J., presiding. The exceptions were overruled and judgment rendered for the plaintiff to recover the sum named as liquidated damages, with interest from the date of the writ. The defendant excepted.

*Wilson & Hall* for the plaintiff.

*Farrington & Post* for the defendant.

TYLER, J. It appears by the referee's report that the plaintiff had a large well-established and profitable fire, life and accident insurance business in St. Albans, representing twenty-three or more companies; that in the spring of 1888 the defendant entered his employment as a clerk in his insurance office, and that on October 28, 1889, while he was so employed, the parties entered into the following written contract with each other:

"In consideration of the agreement of the said McDonald hereinafter contained, said Borley agrees to employ him, the said McDonald, in his insurance business for the term of one year from the 21st day of October, 1889, unless this contract is sooner determined by its terms or by agreement, at and for the sum of not less than fifty dollars per month, payable at the end of each and every month. And the said McDonald agrees for himself, his heirs and assigns, that in consideration of said salary of not less than fifty dollars a month, he will devote his time and energies to the insurance business of said Borley eight hours each day in such part of said insurance business as said Borley shall direct, and that in case of the determination of this agreement by its terms, by limitation, or for any cause, he will not, in the town of St. Albans, directly or indirectly, for the period of one year from the conclusion of service under the contract, solicit any insurance that shall at that time be held by said Borley from any party or parties whatsoever; and that he will not do any act or thing in advantage of the said Borley by reason of information gained in his service; and in case said McDonald shall violate this provision of this agreement he hereby agrees for himself, his heirs, executors, administrators and assigns, to forfeit and pay to said Borley the sum of five hundred dollars as liquidated damages to be recovered in an action of assumpsit. This contract to control as to the amount of damages. It is further stipulated and agreed that, in case either party shall be dissatisfied with the other, this contract may be determined so far as service and compensation are concerned, by giving notice to the other party in writing."

The defendant had no previous knowledge of the insurance business, but for some time before he left the plaintiff's service he had been the general manager of the business and had access to and knowledge of the insurance registers and other books kept by the plaintiff. He remained in the plaintiff's employment under the contract from its

date until August 28, 1890, when for reasons not stated, the plaintiff discharged him.

September 25, 1890, the defendant, A. D. Tenney and S. S. Watson formed a partnership, and for the purpose of carrying on a like insurance business as equal partners, they bought and established a business in St. Albans and have ever since prosecuted it under the firm name of Tenney & Watson, their business being in active competition with the plaintiff's.

The plaintiff considered that the defendant's entering into this partnership was in violation of the contract and that he had otherwise broken it, and in January, 1891, brought a bill in equity against him and procured an injunction by which the defendant was enjoined from directly or indirectly prosecuting insurance business in violation of the written contract. Proceedings were subsequently instituted against the defendant for an alleged violation of the injunction; the matter was referred to a master who reported the facts to the court, whereupon the court of chancery, at the September Term, 1891, for the county of Franklin, considered and adjudged that the defendant had violated the injunction and was guilty of a contempt and imposed upon him the payment of a fine of fifty dollars and costs.

It is unnecessary to decide the question, which has been discussed by counsel, whether the decree of the chancellor in the proceeding against the defendant for violating the injunction is conclusive of a breach by him of the written contract, for the referee has found such breach as a fact from the evidence.

The fact of the defendant's entering into a partnership which was engaged in a business in competition with the plaintiff's, with the fact that the defendant's partners did at different times during the year solicit and obtain insurance business from parties in the town of St. Albans who were insured in the plaintiff's companies and known by the defendant's partners to be so insured, was a violation of

the contract. In such case the act of each partner was the act of the partnership.

Evidence that the plaintiff understood at the time of making the contract that the defendant had a right to represent any insurance company and to solicit any insurance that was not held by the plaintiff at the time the defendant left the plaintiff's employment, and to solicit any additional insurance of parties that held insurance with the plaintiff, was inadmissible. The contract is clear and explicit upon this subject.

The referee also found a breach of the contract by the defendant in his soliciting and obtaining insurance of C. L. Moren.

The next question is whether the plaintiff shall recover the actual damages found by the master, or the sum of five hundred dollars named in the contract as liquidated damages.

It was clearly error for the referee to find from extrinsic evidence that when the parties entered into the contract they both understood that for a breach of it only actual damages would be recoverable. The contract was the best evidence of their understanding.

In *Barry* v. *Harris*, 49 Vt. 392, the defendant sold the orator a freight business over certain routes and gave a writing promising the orator that he would pay him five hundred dollars if the defendant re-engaged in that business. It was held that the damages were stipulated, upon the ground of the practical impossibility of ascertaining the damages consequent upon a breach of the contract, the reasonableness of the sum named and the purpose of the contract. The court said: "Contracts whereby a party agrees not to exercise his vocation for a limited time or in a particular place, under an obligation to pay a stipulated amount, have often, perhaps generally, been held to be contracts conditioned for the payment of liquidated damages rather than penalties. The difficulty of ascertaining the actual

damages in such cases has doubtless led to this construction. They have been regarded in many cases as alternative contracts, giving the party the right to pay the sum named if he wishes to do the thing prohibited." It further said that when it is clear that the parties have agreed for themselves upon a definite sum as the measure of the damages, courts will not undertake to make new contracts for them. A similar case is *Cushing* v. *Drew*, 97 Mass. 445.

It was said in *Stevens* v. *Pillsbury*, 57 Vt. 205, that: "It has rarely been held that, in a contract by which a party has agreed to refrain from exercising a particular trade or profession within a named locality, and agreed upon the sum to be paid, if he breaks his agreement, that the sum thus agreed upon has been held other than liquidated damages," citing several authorities. One of the principal reasons given for this holding was the difficulty of measuring the damages. The same rule is given in *Chase* v. *Allen*, 13 Gray 42, and in *Hall* v. *Crowley*, 5 Allen 304. In 13 Am. & Eng. Ency. 854, numerous cases are considered and the rule stated that:

"It is now well settled that a sum, if it be at all reasonable, stipulated to be paid as 'liquidated damages' for the breach of a covenant, will be regarded as such, and not as a penalty, where, from the nature of the covenant, the damages arising from its breach are entirely uncertain, and cannot be ascertained upon an issue of fact."

"Where an agreement is for the performance or non-performance of only one act, and there is no adequate means of ascertaining the precise damage which may result from a violation, the parties may, if they please, by a separate clause of the contract, fix upon the amount of compensation payable by the defaulting party in case of a breach; and a stipulation inserted for such a purpose will be treated as one for 'liquidated damages,' unless the intent be clear that it was designed to be only a penalty."

It is true that where the terms, "liquidated damages," and

"penalty" are employed in the contract they will not always be conclusive, but the intention of the parties will be ascertained from the contract and the circumstances in which it was made, its real purpose and the difficulty in ascertaining the damages when it is broken. In this case, upon leaving the plaintiff's service the defendant entered into a competing business and broke his contract; it is practically impossible to ascertain the damages, and as was held in *Barry* v. *Harris*, considering the form of the contract, its evident purpose, and the reasonableness of the sum named, a case is clearly made of liquidated damages.

*Judgment affirmed.*