# New England Educational Training Service, Inc. and John S. Burgess v. Silver Street Partnership and The National Mortgage Company

[595 A.2d 1341]

No. 88-513

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Martin, Supr. J., Specially Assigned

Opinion Filed June 7, 1991

*Thomas F. Heilmann* of *Thomas F. Heilmann & Associates*, Burlington, for Plaintiffs-Appellants.

*Peter W. Hall* of *Abell, Kenlan, Schwiebert & Hall*, Rutland, for Defendant-Appellee.

**Dooley, J.** Plaintiffs New England Educational Training Service Corporation (NEETS) and John Burgess appeal from the trial court's dismissal of their mortgage foreclosure action. We affirm.

Although the facts behind this dispute are somewhat complicated, we can reduce them to their essentials as follows. The property involved in the foreclosure is located on Silver Street in Bennington ("the Silver Street property") and is apparently owned by defendant Silver Street Partnership, pursuant to a quitclaim deed from defendant Snowfall, Inc. How these parties acquired the property is irrelevant. It is only relevant that the property was once owned by James Donahue (Donahue) and that he gave a mortgage deed on the property to plaintiffs.

The center of the dispute is a different piece of property, the former facilities of Mark Hopkins College ("the college property"). The college property was the subject of a foreclosure

action by Vermont National Bank. Through a complex series of transactions connected with the failure of this college, title to this property came into the hands of John S. Burgess, a trustee, treasurer, and attorney for the college. NEETS, a creditor of the college, also had an interest in the property. They attempted to sell the property to Donahue, apparently with the understanding that he would take over the operation of the college and put it back on its feet. Donahue proved to be a reluctant purchaser. Although he would sign purchase and sales agreements, he would not go through with them. It is Donahue's failure to go through with the purchase of the college property that gives rise to this action.

The initial purchase agreement was dated December 31, 1976. Donahue agreed to buy the property from plaintiff NEETS and pay $4,000 for a down payment, $50,000 in escrow, and $110,000 on closing. The agreement provided for a March 3, 1977 closing, and was contingent upon NEETS acquiring title to the premises through the then-pending foreclosure proceedings. Section C(4) of the agreement contained the following language: "[i]n the event BUYER shall fail to pay the balance of the purchase price or complete said purchase as herein provided, all amounts paid hereinunder shall, at the option of NEETS, be retained as liquidated damages." Donahue failed to complete the purchase. On March 19, 1977, the agreement was extended for thirty days, but Donahue again failed to complete the purchase.

On July 5, 1977, with both NEETS and Burgess involved, the agreement to purchase was extended by another thirty days. The extension agreement provided that the terms of the December 31 contract would remain in force. Donahue concurrently executed a mortgage deed covering the Silver Street property to NEETS and Burgess. The mortgage deed stated that Donahue had received $160,000 from NEETS and Burgess as consideration for the conveyance and that the property was conveyed free of encumbrances except for a first mortgage to a prior owner. According to its terms, the deed secured a promissory note for $160,000 to plaintiffs. Donahue executed such a promissory note, payable thirty days later. Neither the mortgage deed nor note indicated that these instruments were intended to secure Donahue's performance on the purchase and

sale agreement for the college property. It is undisputed, however, that Donahue never received $160,000 from plaintiffs.

The mortgage was recorded on July 6, 1977, in the Town of Bennington land records. Donahue again failed to purchase the college property and, hence, never made payments on the mortgage note. Burgess eventually sold the property to another party for $220,000.

On September 6, 1984, plaintiffs brought this action to foreclose their mortgage on the Silver Street property. On September 18, 1984, defendants brought suit against their predecessor in title, Donald and Gloria Humphreys, for breach of warranty of title, and against plaintiffs for their failure to discharge the mortgage. The Humphreys cross-claimed against plaintiffs for failure to discharge the mortgage and mortgage note, alleging that plaintiffs had received full payment for the indebtedness that the mortgage purportedly secured.* These actions were consolidated on March 29, 1985.

Following an appeal and remand on issues unrelated to the present appeal, *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99, 528 A.2d 1117 (1987), the case was tried by court on August 10th through 12th, 1988. Plaintiffs advanced two theories of recovery. First, they claimed that since Donahue made no payment on the $160,000 mortgage note, the mortgage was in default and plaintiffs were entitled to foreclosure as a matter of law. Alternatively, they claimed that they were entitled to foreclose because, on the underlying purchase and sale agreement, $160,000 was due as liquidated damages, a sum which was secured by the mortgage note and deed.

The trial court granted judgment for defendants at the close of plaintiffs' case and made oral findings and conclusions on the

---

* In their cross-claim against NEETS and Burgess, the Humphreys alleged further that at some time prior to the date they instituted their 1980 foreclosure action against Donahue, someone removed from the Bennington land records the index cards which showed the mortgage from Donahue to NEETS and Burgess. The Humphreys claimed that they had failed to join NEETS and Burgess as parties to their foreclosure action because there was no record of plaintiffs' security interest. Because the trial court in the present action discharged plaintiffs' mortgage as without force, he dismissed the Humphreys' cross-claim.

record. In a September 8, 1988 judgment order, the court declared the mortgage "of no force and effect." Plaintiffs appeal from that order, arguing that: (1) since the mortgage deed and note were unambiguous, the court improperly considered parol evidence in determining the effect of the documents; (2) the trial court erred in making certain factual findings; and (3) the trial court erred in granting the motion for dismissal and in discharging a valid, enforceable mortgage.

I.

Plaintiffs' first argument is that the trial court improperly considered parol evidence in determining the enforceability of the mortgage deed and note. Plaintiffs contend that absent a finding that the deed and mortgage were ambiguous, the court was not permitted to consider evidence of an underlying agreement between plaintiffs and defendant. The trial court relied on various items of evidence that would be excluded under plaintiffs' parol evidence argument, including the purchase and sale agreement, the extension of the time for closing which was signed contemporaneously with the note and mortgage, testimony that Donahue never received the $160,000, and Burgess's testimony that the mortgage would have been cancelled if Donahue had purchased the college property.

The parol evidence rule is applicable to exclude evidence of a prior or contemporaneous oral agreement offered to vary or contradict the terms of a written agreement. *Tilley v. Green Mountain Power Corp.*, 156 Vt. 91, 93, 587 A.2d 412, 414 (1991); *Big G Corp. v. Henry*, 148 Vt. 589, 592–93, 536 A.2d 559, 560–61 (1987). For a number of interrelated reasons, it is not applicable here.

First, the only part of the mortgage or note that was contradicted by the court's finding was the statement in the deed that Donahue had received $160,000 from the plaintiffs. A statement of consideration is not a term of any agreement; hence, the parol evidence rule does not preclude evidence that the statement of consideration is inaccurate. See *Citizens Sav. Bank & Trust Co. v. Paradis & Sons, Ltd.*, 102 Vt. 114, 118, 146 A. 3, 4 (1929); *White v. Miller*, 22 Vt. 380, 384 (1850).

Second, although the parol evidence rule is applicable to a mortgage or note, these instruments are employed for special

purposes. The primary purpose of the mortgage is to give the creditor a security interest in the property based on a specific promise to pay contained in the note. The note, in turn, is drafted to be a negotiable instrument. These special-purpose documents seldom embody a complete statement of the agreement between the parties. See 3 A. Corbin, Corbin on Contracts § 587 (1960). In the terminology of the Restatement of Contracts, they form only a partially integrated agreement. See Restatement (Second) of Contracts § 210(2) (1981). The court could look beyond these documents to determine the complete agreement of the parties. Thus, it was proper for the court to consider the purchase and sale agreement and its extensions, as well as the surrounding circumstances of the parties.

Third, the evidence was not used in this case to contradict or vary the terms of the instruments. Although the trial court found from the evidence that the note and mortgage did not represent the true agreement of the parties, its conclusion was that they could not be enforced because they were inequitable or unconscionable. This use of parol evidence is similar to what we have authorized in the past. For example, we have authorized the use of parol evidence to determine whether there had been any consideration for a mortgage. See *Quazzo v. Quazzo*, 136 Vt. 107, 110, 386 A.2d 638, 640 (1978) ("great latitude" granted with respect to evidence offered in mortgage foreclosure case to show lack of consideration); *Ladam v. Squires*, 127 Vt. 95, 97, 241 A.2d 58, 59 (1968) (parol evidence rule does not preclude proof of lack of consideration as between original parties to an agreement). In addition, we have authorized admission of such evidence to ascertain the true character and purpose of the mortgage, rather than to vary the terms contained within the instrument. See *Wells v. Foss*, 81 Vt. 15, 17, 69 A. 155, 155 (1908) (parol evidence admissible to show that mortgage and note were actually intended to secure prior debt rather than other consideration recited in the instruments; "Its tendency was to show the true character of the mortgage, and it was properly received."). The uses made of the evidence in this case were consistent with the parol evidence rule, and, as discussed below, formed a defense to plaintiffs' foreclosure complaint.

## II.

██ Plaintiffs' next argument is that the trial court erred in granting judgment for defendants at the close of the plaintiffs' case. V.R.C.P. 41(b)(2) provides that a defendant in a nonjury trial may move for involuntary dismissal at the close of plaintiff's case, on the ground that the plaintiff has shown no right to relief on the facts and law. A Rule 41(b)(2) motion for involuntary dismissal "serves the function of a directed verdict motion in a jury case." Reporter's Notes, V.R.C.P. 41, at 203. The court, however, is required to make findings in accordance with Rule 52(a). V.R.C.P. 41(b)(2). As opposed to a directed verdict, the court is not required to take the evidence in the light most favorable to the nonmoving parties. *Blais v. Blowers*, 136 Vt. 488, 489, 394 A.2d 1124, 1124 (1978). On appeal, the question is whether the court's fact findings are clearly erroneous, viewing the evidence in the light most favorable to the prevailing party. *Stevens v. Cohen*, 138 Vt. 7, 8–9, 409 A.2d 604, 605 (1979). Plaintiffs argue that the court's dismissal was erroneous because a number of its findings were clearly erroneous.

Plaintiffs first challenge the court's "finding" of a "complete lack of documentary definition of what in fact this mortgage . . . really is." The court made this comment as part of its discussion of whether parol evidence was admissible and not as a finding of fact. As plaintiffs admit, the court actually found that the mortgage was security for Donahue's agreement to buy the college land, and plaintiffs have not attacked that finding. Thus, there is no finding here against which to apply the clearly-erroneous test, and the argument fails.

Plaintiffs next attack the court's finding that, if foreclosure was granted, plaintiffs' combined income from the sale of the Brattleboro property and foreclosure on the Silver Street property would amount to "in the neighborhood of half a million dollars." This finding was based on the testimony of Burgess and reflects an obvious addition of the proceeds of the sale of the college land to the potential proceeds of this litigation if plaintiffs prevail. We can find no basis for plaintiffs' claim that the court intended it to be a net profit figure, rather an approximation of gross return on the property. It is not clearly erroneous.

Plaintiffs also attack the court's "insinuat[ion]" of impropriety on Burgess's behalf in obtaining the college property. We

recognize that the trial court was concerned about how Burgess came to control the college land, but we see no finding on this point and nothing directly related to the court's conclusions.

■ Finally, plaintiffs attack the court's finding that plaintiffs had only a "prospective interested buyer" for the college property when they extended Donahue's right to purchase. They argue that the undisputed evidence showed that they had a binding written offer to purchase. The court's finding is reasonable in light of plaintiffs' failure to produce the written offer or to show the offered price. Further, on the state of the evidence, this finding is only marginally relevant to the court's conclusions.

### III.

■ Plaintiffs' final claim—indeed the crux of their appeal— is that once default of the underlying obligation had been proved, it was an abuse of discretion for the court to refuse to foreclose the mortgage. Because foreclosure actions are by their nature equitable actions, it is proper for the court to weigh the equities of the circumstances in determining whether to grant foreclosure. *Retrovest Assocs. v. Bryant*, 153 Vt. 493, 500, 573 A.2d 281, 285 (1990); *Merchants Bank v. Lambert*, 151 Vt. 204, 206, 559 A.2d 665, 666 (1989). A weighing of the equities necessarily involves judicial discretion in evaluating a broad range of relevant considerations. Thus, in *Johnson v. Johnson*, 125 Vt. 470, 218 A.2d 43 (1966), we stated:

> The sufficiency of the consideration, the mutuality, certainty, and clarity, completeness, and fairness of the contract, its capability of proper enforcement by decree, and the presence or absence of any showing that it is tainted or impeachable, or that its enforcement would be unconscionable are elements relevant to the exercise of that discretion. If the chancellor has granted or denied relief by the exercise of discretion based on such equitable considerations, the result is reviewable only upon a clear and affirmative showing of abuse.

*Id.* at 473, 218 A.2d at 45 (citations omitted). Although *Johnson* was a specific performance case, its itemization of the relevant considerations is equally applicable in a mortgage foreclosure action.

When we weigh the equities in this case, the court's decision to dismiss the foreclosure action must be sustained on appeal. It is undisputed that the consideration recited in the mortgage deed, the $160,000 payment from plaintiffs to Donahue, did not exist. Thus, Donahue's note obligating him to pay $160,000, and the mortgage that secured it, must have been given either as part-payment for the college property or as consideration for the thirty-day extension of the purchase and sale agreement. Either possibility creates a viable defense. If the former, Donahue never obtained his interest in the college property, and plaintiffs would achieve a double recovery in the foreclosure. Cf. *Licursi v. Sweeney*, 156 Vt. 418, 594 A.2d 396 (1991) (holder of equity of redemption as result of foreclosure not permitted to recover on underlying note where "double recovery" would result in unjust enrichment). If the latter, the extension price, which is almost equal to the purchase price, is so unfair as to be unconscionable.

Plaintiffs seek to avoid the court's analysis by arguing that the note amount represented liquidated damages under the specific provision of the purchase and sale agreement allowing plaintiffs to retain "all amounts paid hereunder." Accepting that this is a viable construction of the agreement, there are limits on the amounts that can be claimed as liquidated damages. It is well settled that a liquidated damages clause must meet three criteria to be upheld: (1) because of the nature or subject matter of the agreement, damages arising from a breach would be difficult to calculate accurately; (2) the sum fixed as liquidated damages must reflect a reasonable estimate of likely damages; and (3) the provision must be intended solely to compensate the nonbreaching party and not as a penalty for breach or as an incentive to perform. See Restatement (Second) of Contracts § 356 (1981); *Borley v. McDonald*, 69 Vt. 309, 313, 38 A. 60, 61 (1897); *Stevens v. Pillsbury*, 57 Vt. 205, 213 (1884). There is no evidence that the $160,000 security interest in the mortgaged property was a reasonable estimate of plaintiffs' likely damages. Burgess himself testified that the arrangement was intended as an incentive to secure Donahue's performance, suggesting that he saw it as a penalty that Donahue would avoid if possible. If the mortgage and note were in-

tended to provide liquidated damages, we find them facially invalid as creating an illegal penalty instead.

 We note that plaintiffs argue that the result, the dismissal of the foreclosure action, is too harsh for the circumstances and inappropriately causes plaintiffs to forfeit their mortgage. In this argument they rely on *Merchants Bank v. Lambert*, 151 Vt. at 207, 559 A.2d at 667, to the effect that it is not the nature of equity to work a forfeiture. In *Merchants Bank*, the weighing of the equities showed that it was possible to allow the creditor to foreclose a mortgage while reducing the amount secured to reflect damage to defendant caused by failure of the bank to notify her that the mortgage was in default. See *id.* Here, the trial court found that the mortgage, viewed in light of the note and underlying purchase and sale agreement, reflected an invalid, unconscionable arrangement and that plaintiffs had already received a sufficient profit from the later sale of the college property. Simply stated, the equities balance differently here than in *Merchants Bank*.

*Affirmed.*