### Steven RENAUDETTE, et ux. v. BARRETT TRUCKING CO., INC., et al.

[712 A.2d 387]

No. 97-423

April 14, 1998. This appeal arises out of an action to determine whether defendant Barrett Trucking Co., or plaintiffs Steven Renaudette and Catherine Beaudoin, should recover the $4,000 down payment plaintiffs made to an escrow agent pursuant to a real estate purchase and sale agreement. Defendant appeals an order of the Chittenden Superior Court finding that although plaintiffs breached the purchase and sale agreement, because de-

fendant did not suffer any actual damages, defendant was not entitled to recover the $4,000 down payment specified as liquidated damages in the agreement. Defendant contends that the reasonableness of the liquidated damages provision must be assessed at the time the contract is entered into, and viewed from this perspective, a $4,000 liquidated damages provision on a $170,000 real estate purchase is reasonable. We agree and reverse.

The parties signed a purchase and sale agreement for a five unit apartment building on June 21, 1995. The agreement provided for a purchase price of $170,000 with a down payment of $4,000 to be held in escrow by Trombley Real Estate. The agreement set the date for closing as August 15, 1995. The agreement also contained a liquidated damages provision which stated in part:

> Deposits: . . . . In the event either Seller or Purchaser does not perform and fails to close on the terms specified herein, this shall constitute a default. In the event of a default undisputed by Seller and Purchaser, upon written demand, Escrow Agent shall pay the deposit to the non-defaulting party.

Plaintiffs were unable to close on August 15, 1995, because their bank was unwilling to finance the sale until it received an appraisal report on the property. Plaintiffs were prepared to close on August 16, 1995, but defendant declined to proceed with the sale.

On September 6, 1995, plaintiffs filed suit in superior court seeking specific performance of the agreement. Defendant filed a counterclaim seeking a declaration that, due to plaintiffs' breach of the agreement, it was entitled to retain the $4,000 down payment pursuant to the liquidated damages provision.

After a trial, the court found that specific performance was impossible under the circumstances,[1] and instead awarded plaintiffs the deposit, attorney's fees and costs. The court ruled that plaintiffs should receive the deposit because, measuring the damages as of August 16, 1996 (one day after the breach), it was apparent that defendant had never suffered any actual damages and thus the liquidated damages provision was unreasonable and unenforceable. This appeal followed.

Defendant claims that the court misinterpreted the law with respect to liquidated damages by assessing the reasonableness of the liquidated damages clause after plaintiffs had breached the contract. Defendant asserts that the reasonableness of the liquidated damages clause must be assessed at the time the agreement is entered into and not after the breach has occurred.[2]

We begin by noting that a determination of whether a liquidated damages provision is reasonable is a question of law for the court. See *Highgate Assocs., Ltd. v. Merryfield,* 157 Vt. 313, 316, 597 A.2d 1280, 1282 (1991). Thus, where the court applies the correct legal standard, we will uphold its conclusions of law if reasonably supported by its findings. See *id.*

In *New England Educational Training Service, Inc. v. Silver Street Partnership,* we articulated three factors that should be considered in determining whether a contract provision is a reasonable liquidated damages clause rather than an unlawful penalty:

> [A] liquidated damages clause must meet three criteria to be upheld: (1) because of the nature or subject matter of the agreement, damages arising from a breach would be difficult to calculate accurately; (2) the sum fixed as liquidated damages must reflect a reasonable estimate of likely damages; and (3) the provision must be intended solely to compensate the nonbreaching party and not as a penalty for breach or as an incentive to perform.

156 Vt. 604, 613, 595 A.2d 1341, 1346 (1991).

A judgment as to whether these criteria have been met must be made at the time the contract is entered into and not after the contract has been breached. See *Watson v. Ingram,* 851 P.2d 761, 765-66 (Wash. Ct. App. 1993) ("So long as the deposit amount agreed upon is not so disproportionate to possible damages as to be unconscionable, when estimated prospectively from the time the contract is formed, the terms of the earnest money agreement should be enforced without regard to the retrospective calculation of actual damages or the ease with which they may be proven."); *First Nat'l Bank of Barrington v. Oldenburg,* 427 N.E.2d 1312, 1318-19 (Ill. App. Ct. 1981) ("It is axiomatic that where, as here, the buyers default on a contract, the sellers may retain the full amount of the earnest money without reference to the amount of actual damages which the sellers may have suffered as a result of the purchasers' default."); *Alley v. Rodgers,* 599 S.W.2d 739, 741 (Ark. 1980) ("In determining the proper interpretation of a

---

[1] Due to a recently enacted statute requiring landlords to take certain steps to reduce the risks associated with lead paint, 18 V.S.A. § 1759, the court found that specific performance was no longer feasible. The court did not believe that an order requiring defendant to bring the building into compliance with the lead paint laws would be effective.

[2] Defendant also contends that because plaintiffs failed to raise the liquidated damages issue in their complaint, the trial court erred by returning the $4,000 deposit to plaintiffs. We do not reach this issue because we reverse on separate grounds.

provision for damages, we must 'place ourselves in the position of the contracting parties and view the subject-matter of their contract prospectively, and not retrospectively.'"); see also 14 R. Powell & P. Rohan, Powell on Real Property ¶ 882[2][d], at 81-224-25 (1992) ("If it later turns out that the seller has no actual damages because the value of the property has risen, that fact does not negate the availability of the liquidated damages remedy, as long as the amount specified as liquidated damages was not unreasonable at the time the parties entered into their agreement.").

Considering the criteria outlined in *Silver Street Partnership* as of the time the parties entered into the contract, we conclude that the liquidated damages clause is reasonable and enforceable. First, at the time plaintiffs and defendant entered into the contract, neither party could have adequately anticipated the amount of damages which would arise from a breach of the agreement. The damages incurred from a breach of a real estate contract are hard to anticipate because it is difficult to determine if the property will be resold for an equivalent price or the amount of time required for a resale of the property. See *Pima Savings & Loan Ass'n v. Rampello*, 812 P.2d 1115, 1118 (Ariz. Ct. App. 1991); *Growney v. C M H Real Estate Co.*, 238 N.W.2d 240, 243 (Neb. 1976).

The second and third factors are inextricably linked and therefore best considered together. These factors are intertwined because, if the liquidated damages provision is reasonable at the time the contract is entered into, than it should be considered compensation for the breach and not a penalty or incentive to perform. There is nothing to indicate that a $4,000 liquidated damages provision is unconscionable or disproportionate to the damages likely to result from a breach of a $170,000 real estate purchase. The liquidated damages represent only 2.3% of the total purchase price of the property. This amount is well within the range of liquidated damages clauses which have been determined to be reasonable in other jurisdictions. See *Covington v. Robinson*, 723 S.W.2d 643, 647 (Tenn. Ct. App. 1986) (liquidated damages provision representing only 5% of total purchase price was deemed reasonable); *First Nat'l Bank of Barrington*, 427 N.E.2d at 1318 ($13,450 liquidated damage provision on purchase of $134,450 home was reasonable); see also 14 Powell & Rohan, *supra*, ¶ 882[2][d], at 81-225 (Down payments of up to ten percent of the price are common in many locations and have been validated by courts as an acceptable amount for liquidated damages.).

Therefore, considering the liquidated damages clause at the time the contract was entered into, the $4,000 deposit is reasonable and fair.

*Reversed.*