Filed 12/05/23

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 12-1-17 Oscv

| Bank of America N.A. vs. Richardi et al |
| --- |

## ENTRY REGARDING MOTION

Title:  Motion Renewed for Mediation Sanctions (Motion: 4)
Filer:  Grace B. Pazdan
Filed Date:  July 28, 2023

The motion is GRANTED.

This is a motion for sanctions against Plaintiff Bank of America, N.A., for delays and bad faith during the foreclosure mediation process. Defendants Frank and Michelle Richardi seek relief for the bad faith that Bank of America exercised during the foreclosure mediation process and seek an award of sanction under 12 V.S.A. § 4635. As the Court has previously ruled, Bank of America, through the actions of its services caused undue delay and demonstrated bad faith in the mediation process. As a result, the Richardis are entitled to sanctions under section 4635. In addition, the Court finds that the Bank of America has not complied with its discovery obligations in this matter and has caused a year-long delay in resolving this claim by refusing to provide a breakdown for the amounts accrued by Bank during mediation. This failure to produce any such information entitles the Richardis to additional sanctions under V.R.C.P. 37(b).

*Foreclosure Mediation Sanctions*

Under Vermont law, a homeowner faced with foreclosure on their principal residence has the right to seek mediation through a court-appointed mediator whose role is the bring the parties together and discuss potential mitigation solutions and shepherd the exchange of documents and information to facilitate this process. 12 V.S.A. §§ 4631–4633. The provisions of Section 4633 lay out in significant detail the requirements and provisions of the mediation process, including who must attend, what must be reviewed, and what must be considered. It also contains an obligation that the parties act in good faith and in a timely manner. Id. at § 4633(b)(1) and (c). These

provisions are enforced under 12 V.S.A. § 4635, which provides that if the mediator reports bad faith or if the Court determines non-compliance by one or more parties, then it may impose sanctions on the non-complying party.  Id.

In the present case, the foreclosure mediator reported that notwithstanding the parties' success in reaching a reinstatement, there was bad faith on the part of the Bank, which repeatedly delayed the reinstatement process and extended the mediation process by repeatedly requesting the Richardis to file and re-file their financial application documents numerous times—regardless of whether the documents themselves had or could grow stale. As the mediator noted in his report:

> Servicer, Carrington Mortgage Services, LLC did not review borrowers' loss mitigation options in good faith. Carrington repeatedly: requested documents from borrowers that had previously been submitted; made burdensome and unreasonable document requests; submitted supplemental document requests with short, arbitrary deadlines (sometimes deadlines had passed by the time borrowers received the notice); did not review documents in a timely manner then declared documents previously submitted "stale" and requested borrowers' submit all new documents or sent notice that the loan modification review process was cancelled; requested documents after indicating they had received a complete package, then cancelled review or required all new document submissions because previously submitted documents had gotten "stale"; all of which perpetuated a document loan modification application/rejection cycle that resulted in significant delay of the mediation process during which borrowers' numerous loan modification applications were never fully reviewed for a period of over four years.

Foreclosure Mediation Report, Mar. 18, 2022 (Tim King, Mediator).

Bank and its servicer do not deny the substance of the Mediator's Report.  Much of this back and forth is memorialized in the May 2, 2022 affidavit of Terrence Morley, Director of Loss Mitigation for Carrington Mortgage Services, LLC.  This 13-page, 101 paragraph document, filed by the Bank with its original opposition to the Richardis' motion for sanctions, details the year-after-year and round-after-round of filing and re-filing that occurred.  Thus, while the Richardis did reinstate their mortgage, they did so only after six years of mediation process beginning in 2016. And continuing until March 2022.  Over that time, they incurred over $89,497.29 in fees, interests, and other charges as well as damage to their credit score.  Bank does not justify these delays apart from a nominal reliance on delays in the process and need to refresh documentation,  but it never credibly rebuts the statements of the mediator or the allegations of the Richardis.

As stated in the Court's September 2, 2023, the Court finds that the evidence from the foreclosure mediation indicates bad faith on the part of the Bank in its failure to participate in the mediation process in a timely manner. The court agrees with the Richardis that Bank failed to comply with its obligations under the foreclosure mediation act. Although the act does not require a mortgagee to offer a loan modification to its mortgagor, the mortgagee must "cooperate in good faith under the direction of the mediator to produce the information required by subsections (a) and (b) of this section **in a timely manner** so as to permit the mediation process to function effectively." 12 V.S.A. § 4633(c) (emphasis added). Several courts confronted with similar facts have found that such delays and dilatory behavior constitute bad faith. See, e.g., *U.S. Bank Nat. Ass'n v. Sarmiento*, 121 A.D.3d 187, 203-204 (N.Y. App. Div. 2014) (holding that dilatory behaviro and miscommunication constituted bad faith by plaintiff in New York's foreclosure mediation process); *Bank of America v. Conrad*, No. 246-5-12 Wmcv (Oct 15, 2013) (Wesley, J.) (holding that delays and inaction constituted bad faith and constituted sanctionable behavior under the Vermont foreclosure mediation statute); *Bank of America v. Thomas*, No. So144-12 CnC (Sep 11, 2012) (Mello, J.) (also holding that delays constituted bad faith and entitled defendants to sanctions). As noted by the foreclosure mediator, the Bank did not act in a timely manner, made repetitive requests, miscommunicated, and delayed the mediation process. Therefore, the Richardis are entitled to sanction under 12 V.S.A. § 4635(b). Under this section, the Court has the authority to impose one of five sanctions: (1) tolling of interests, fees, and costs; (2) reasonable attorney's fees; (3) monetary sanctions; (4) dismissal without prejudice; and (5) prohibiting the mortgagee from selling or taking possession fo the property.

When the Richardis originally sought sanctions, the Court indicated in both written order and at status conferences that it did not understand Section 4635(b) to plainly authorize the Court to grant the Richardis the entire $89,497.29 amount that they sought as this number appeared to have both foreclosure related fees and costs as well as interest or escrow payments that would have accrued or been necessary even if the property was not in foreclosure. To this end, the Court directed the Richardis to serve discovery on Bank to determine the source of these amounts and to distinguish between amounts related to the foreclosure, amounts that might be equitably tolled, and amounts that either lay outside the foreclosure process or should not be discharged under Section 4635 in this matter.

The subsequent record, including deposition transcripts, exhibits, and the testimony of the parties, shows that the Richardis embarked on this discovery in good faith but ran into a what can only be characterized as a refusal from Carrington, Bank's loan servicer, to identify the source of these amounts. The deposition of Jon Greenlee demonstrates this problem. Greenlee was put forward in May 2023 as the Carrington representative who could answer the Richardis' questions as to how the amounts arose and were added to the Richardis' mortgage. During his deposition, however, he could not break down the $89,497.29 number any further than two large chunks of $47,671.19 as a HUD partial claim and $41,826.10 in "interest." Any effort by the Richardis' counsel to determine what portion of these amounts were attributable to legal fees, escrow advances, hazard insurance, or taxes, proved fruitless. The Bank has also not provided any documentation or written breakdown of these amounts. Even at the November 9, 2023, Bank was unable to provide any breakdown on these amounts and distinguish between the amounts that might reasonably be applicable to Section 4635 and what were amounts that lay outside this scope of sanctions.

Another example of how this process became unnecessarily complicated arises from the mortgage statements. For several months, the Richardis' mortgage statements issued to them by Carrington have indicated a growing, past due balance, which currently sits at $17,290.64. Prior to the November 9, 2023 hearing, Carrington and Greenlee did not or could not identify the source of this claimed amount. (Greenlee Depo, at 53–56). Only at the November 9th hearing did Greenlee state that these were legal fees that the Bank had accrued since the reinstatement to defend against the allegations currently pending. Setting aside whether Bank can claim such amounts, it took over six months for the Richardis to get Bank to disclose the source of this amount. Such behavior can only be characterized as a bad faith refusal to provide even basic, responsive information.[1]

Foreclosure is an equitable remedy and courts must weigh the equities in determining the rights of parties to a foreclosure action. *New England Training Serv. Inc. v. Silver St. Partnership*, 156 Vt. 604, 612 (1991). In crafting sanctions, there are three areas where reasonable sanctions should be imposed: financial costs, Defendant's attorney's fees, and Plaintiff's attorney's fees.

While the Court was initially inclined to look to sanctions under Section 4635(b)(1) (tolling interest and fees), the evidence here is inconclusive. After over a year of discovery, the Court has no

---

[1] There is a layer of irony here in that the Court ordered this discovery process in part to ensure that the Bank had an opportunity to distinguish what portion of the $89,497.29 should not even be considered as part of the sanction process.

way of breaking out amounts from the $89,497.29[2] than it would have in July of 2022. Instead, the Court has examined the loan modification process documents and testimony regarding these amounts. It is undisputed that the unpaid loan balance at the time of foreclosure was $190,684.77. It is also undisputed that at the end of the foreclosure process the Richardis' new balance was $232,510.87 in principal balance and $41,826.10 in capitalized interest, which totals **$274,336.97** as a new principal balance. This total amount also included, according to the deposition of Jon Greenlee, at least $43,565.60 in escrow balance amounts (including interest and fees). (Greenlee Depo.at 22, 26). It is unclear whether the $43,565.60 amount overlaps with any of the $41,826.10 amount. As part of the loan modification agreement, the Bank was able, through a HUD program, to reduce the $274,336.97 amount by $47,671.19. This amount was not discharged, but it was turned into a partial claim, reduced to a separate and secondary, non-interest bearing, mortgage due to the HUD Department when the property is sold or refinanced. The effect of this agreement was to reduce the principal balance to $226,665.78.

There are two factors that the Court has taken into consideration during its review of these sanctions. First, there is the fact that despite the delay, the Bank ultimately created a modification that ultimately saved the Richardis' home and reinstated the mortgage for an amount that has proven sustainable. This is the purpose of foreclosure mediation program, and the fact that there was successful outcome should not be discounted or ignored. Second, there is evidence that some of the mitigation programs that enabled the mediation to be successful were tied to the various federal pandemic relief programs. While this does not excuse the delay, it does suggest that some of the benefits that made the reinstatement possible were part of a package of tools that were not available prior to 2021.[3] With these factors in mind, the Court cannot discharge the entire $89,497.29 increase that occurred during the foreclosure mediation process. Instead, the Court finds that the **$43,565.60** stated by Greenlee is a reasonable figure, and the Court awards this amount to

---

[2] This amount comes from Carrington's statements and appears to be a calculation of the amounts added to the Richardis' total mortgage amount, but this figure does not correspond to the larger figures laid out below. Taking the difference between the Richardi's pre-foreclosure balance of $190,684.77 and subtracting it from the new balance of $274,336.97 only yields an amount of $83,652.20, which is nearly $6,000 less than the Carrington-stated amount.

[3] The Court notes that even this mitigating factor comes with an asterisk as Michelle Richardi testified that the Bank only considered them for this program after she had discovered it and insisted that they see if it could be applicable to them.

the Richardis as sanctions for Bank's bad faith. This amount shall be applied to the Richardis' principal balance, which shall be reduced by this amount.

The Richardis also seek their attorney's fees in this matter. While the Richardis were represented by Grace Pazdan of Vermont Legal Aid, Vermont Courts have long-held that such fees may be recovered where attorney's fees are available. *Bisson v. Ward*, 160 Vt. 343, 348 (1993). In this case, attorney's fees are permitted under 12 V.S.A. § 4635(b)(2). The Court finds attorney's fees in this case to be reasonable and appropriate. As the record demonstrates, the Richardis have benefited from counsel, and the issues that have become central to this matter have revolved around legal concerns of discovery. More importantly, Banks' on-going and continuing failure to disclose the amounts have driven up the Richardis' fees with deposition, filing, and hearing costs. The Court has wide discretion in making a determination of reasonable attorney's fees. *L'Esperance v. Benware*, 2003 VT 43, ¶ 21. In this case, the parties have been engaged in over 18 months of active litigation that has involved multiple filings, hearings, and discovery. Attorney Pazdan charges $270 per hour for her legal work. She has provided the Court with invoices tracking her time in this matter and the tasks performed. She has, at the direction of the Court, retained an expert to review and scrutinize these invoices. The Court conducted a hearing on November 9, 2023 at which testimony and evidence of these fees was admitted, and the opinion of Attorney Joshua Simonds was delivered to the Court. Based on the testimony, affidavits, and exhibits, the Court finds that the evidence indicates that Attorney Pazdan's billing has been appropriate and reasonable under the circumstances and facts of this case. The Court finds her attorney's fees are reasonable and awards them as part of the sanctions in this matter. Attorney Pazdan has filed affidavits seeking **$37,071** in legal fees. She also seeks **$669.65** in discovery costs and **$3,290** in expert witness fees. The Court finds these amounts to be reasonable and will award them to the Richardis.

As a final issue, it has come to the Court's attention that Bank has put its legal fees in this matter onto the Richardis as an unpaid balance to the mortgage. While Bank is generally entitled to recover its legal fees associated with the administration of the mortgage, these fees have nothing to do with the administration of the mortgage or the foreclosure. They are fees incurred in defending the present sanctions matter. The Court finds these fees to be unreasonable to assign to the Richardis, and orders that they be removed from the Richardis' account as disallowed.

# ORDER

Based on the foregoing and in accord with 12 V.S.A. § 4635(b), the Court **Grants** Defendants Richardi's motion for sanctions as follows. The Court awards $43,565 to the Richardis, which Plaintiff Bank of America shall pay by removing this amount from the Richardis' unpaid balance on their mortgage. The Court also awards the Richardis their attorney's fees in he amount of $37,071. The Court also awards the Richardis their costs and expert witness fees in the amount $3,959.65. Finally, the Court directs Bank of America to remove any charges for legal fees or costs that are currently attached to the Richardis' account as an unpaid balance for legal fees incurred in the defending of this matter and reduce said balance solely to amounts associated with the unpaid balance remaining and any monthly payments associated with the Richardis' mortgage. Defendants are also directed not to assign any further legal fees or costs associated with this matter to the Richardis or to their account.

Electronically signed on 12/5/2023 1:30 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge