# The Merchants Bank v. Julie Lambert a/k/a Jackie Lambert Vezina & Joseph N. Vezina

[559 A.2d 665]

No. 86-003

Present: **Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.), Martin, Supr. J. and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed February 24, 1989

*Charles R. Tetzlaff* and *Neil D. Wheelwright* of *Latham, East-man, Schweyer & Tetzlaff*, Burlington, for Plaintiff-Appellant.

*Frederick W. Coombs* and *Amy C. Gregory* of *Paradis, Coombs and Fitzpatrick*, Essex Junction, for Defendants-Appellees.

**Barney, C.J.** (Ret.), Specially Assigned. This case involves a mortgage foreclosure which was brought by plaintiff-mortgagee, The Merchants Bank, against the homestead premises of the defendant-mortgagor, Julie Lambert. The homeplace had been pledged as collateral to secure a note executed by the defendant's daughter and son-in-law. Defendant Lambert did not sign the note, never saw the note, did not attend the loan closing and received none of its proceeds. The proceeds financed the establishment and operation of a beauty shop by the daughter and son-in-law. Domestic trouble between the couple put the business at risk, and it eventually failed, leaving the note in default.

The lower court refused foreclosure relief to the bank. It relied on certain stipulated and unchallenged facts to support defendant's equitable defense of laches. We concur that the matter should be resolved on equitable principles, but find that their application leads to a somewhat different result.

The son-in-law and daughter made their last payment on the note on August 10. 1981, about a year and a half after the original transaction. At about that time, having some indication that the business might be in trouble, and in connection with her upcoming marriage, the defendant inquired of the bank concerning the possibility of having the mortgage lifted from the property. However, the bank, according to the unchallenged findings, did not give her any information of substance concerning the state of the note.

Over two years later, on December 2, 1983, the bank gave the defendant her first notice of default by calling on her to pay in full the outstanding loan obligation of more than $20,000 in fifteen days or foreclosure would follow. During the time between 1981 and 1983, the business had failed beyond rescue, and the son-in-law had sold off some $5,600 worth of shop equipment pledged to the bank as security for the note, without applying any of the proceeds to its reduction. Even with notice of this, the bank had taken no action, and had failed to notify the defendant.

■ The trial court noted correctly that, under *Merchants Bank* v. *Thibodeau*, 143 Vt. 132, 133, 465 A.2d 258, 259 (1983), foreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation. See also *Phinney* v. *Levine*, 117 N.H. 968, 971, 381 A.2d 735, 737 (1977) (foreclosure actions arise in equity and therefore are subject to equitable defense of laches). It went on to conclude that the bank's failure to respond promptly to the acts of default amounted to laches, because it deprived the defendant of any opportunity to remedy the situation at a time when correction or salvage might have been possible. Steps such as assuming a managerial role in the business, pursuing the matter of improper asset disposal, seeking refinancing or attempting to dispose of the shop as a going operation came to mind.

The doctrine of laches rests on the premise that there was a failure to assert a right for an unreasonable and unjustified length of time resulting in loss and prejudice to the adverse party and rendering the enforcement of the right inequitable. *Stamato* v. *Quazzo*, 139 Vt. 155, 157, 423 A.2d 1201, 1203 (1980). Deciding the case based solely upon the bank's failure immediately to undertake its remedies of acceleration of the note and foreclosure, as the bank points out, would effectively prevent the bank from attempting to work out alternative solutions with debtors in difficulty. Cf. *Patterson* v. *State Bank*, 55 Ind. App. 331, 339, 102 N.E. 880, 886 (1913) (delay alone does not constitute laches). Furthermore, notice to the surety of the principal's default is required only when stipulated to in the surety agreement, see 72 C.J.S. *Principal and Surety* § 118, and there were no findings as to any agreement between defendant and the bank about such notice.

■ The bank must be charged, however, with its failure to keep the defendant informed of the changing financial picture. The bank was in possession of information which the defendant needed and sought, but which the bank did not disclose. The bank had exclusive knowledge of the developing possibility that the note would be defaulted and that resort to the mortgage security was likely. Considerations of candor and fair dealing, even in an arm's length transaction, required the bank to reveal, not suppress, facts important to the financial risk undertaken by the defendant in the pledge of her home. See *Griffin* v. *Griffin*, 125 Vt. 425, 437, 217 A.2d 400, 410 (1965) (quoting *Newell Brothers* v.

*Hanson,* 97 Vt. 297, 303-04, 123 A. 208, 210 (1924)) (bank required to disclose known facts upon inquiry). *Griffin* was a far more egregious case of a bank seeking possession of a pledged security than we have here, where there is no suggestion of bad faith or constructive fraud. In our view, however, the case implies an obligation of a bank to disclose, not conceal, facts of critical concern to the surety with which it is dealing.

Thus we join with the trial court in finding that the bank's failure to inform the defendant of the deteriorating situation regarding the unpaid note unequivocally caused her loss and detriment, and substantially eliminated any opportunity for her to mitigate her potential loss. See *Turner* v. *Turner,* 131 Vt. 253, 259-60, 305 A.2d 592, 597 (1973). Unlike the situation in *Mitchell* v. *Clark,* 35 Vt. 104, 106 (1862), this defendant has been put in a position of prejudice, and the case cannot be dismissed as a mere technical violation of the rules of commercial law.

It is not the nature of equity, however, to work a forfeiture, even against a set of facts such as these. See *Whiting* v. *Adams,* 66 Vt. 679, 691, 30 A. 32, 35-36 (1894). Equity calls for a remedy measured by the losses occasioned by the actions and failure to act on the part of the bank. On remand, therefore, defendant bears the burden of coming forward with evidence sufficient to establish to what extent she might have avoided financial loss if the bank had disclosed the state of the loan account at the time of her inquiry in 1981. See *Preston* v. *Chabot,* 138 Vt. 170, 172, 412 A.2d 930, 931 (1980). Once established, the loss suffered should be applied against any recovery by way of foreclosure available to the bank in the usual course.*

*Reversed and remanded for further proceedings in accordance with the views expressed in the opinion.*

---

* Defendant counterclaimed that, because she is an "indorser" or an "accommodation party" to the underlying note, principles of Article 3 of the Uniform Commercial Code regarding commercial paper should apply in this case. This claim is without merit. We conclude that defendant was neither an "indorser nor an accommodation party" to the note, and therefore her liability to the creditor is not controlled by Article 3. See *Simpson* v. *Milne,* 677 P.2d 365, 369 (Colo. Ct. App. 1983).