# Retrovest Associates, Inc. v. Thomas W. Bryant and Yola M. Carlough

[573 A.2d 281]

No. 86-213

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed January 26, 1990

494

*Leighton Detora* and *Paul R. Clemente* (On the Brief) of *Valsangiacomo, Detora, McQuesten, Rose & Grearson,* Barre, for Plaintiff-Appellant.

*Robert P. Davison, Jr.,* Stowe, for Defendants-Appellees.

**Dooley, J.** Plaintiff Retrovest Associates appeals from an order of the Lamoille Superior Court awarding damages to defendants Bryant and Carlough and denying plaintiff foreclosure and attorney's fees. We affirm.

In March 1983, defendants engaged plaintiff to inspect an old farmhouse they were interested in purchasing in Stowe, Vermont. Plaintiff's president, David Scheuer, walked through the house with defendants, noted some problem areas, especially a sag in the kitchen floor, but otherwise found no major structural defects. Defendants then bought the house and, setting aside $40,000 in a special construction account, hired plaintiff to do renovations. Their plans included adding a dormer to expand the upstairs, adding a bathroom, expanding the kitchen and repairing its floor, relocating certain interior walls, exposing beams in the ceiling, and converting the garage into a living-dining area. Work began about the 1st of June, 1983.

Disagreements arose as the work progressed more slowly than anticipated and as costs mounted. It became apparent that some sills, floor joists, and other structural timbers required replacement, which had not been contemplated when plaintiff first contracted to do the work. As a result, plaintiff's crew gutted most of the interior of the house, and the part of the house that contained the kitchen was entirely demolished. Defendants paid the bills as they came due up to $43,000.

At this point, defendants had exceeded their budget and the parties had to renegotiate their arrangement. In October of 1983, plaintiff prepared and gave to defendants a list of the work remaining, with a projected cost (including the outstanding balance on the previous bill) of $23,680.60. On October 24, 1983, defendants signed a note declaring that they "promise to pay to Retrovest Associates . . . a sum of money, not to exceed twenty thousand dollars, said sum being the total of unpaid invoices for materials and labor furnished by [plaintiff] to [defendants'] residence . . . between September 1, 1983 and November 15, 1983, said sum being established on or before December 1, 1983." The note, secured by a mortgage on the property, set up a schedule of payments beginning on January 31, 1984.

On December 6, plaintiff sent defendants a bill for services rendered since the signing of the note, along with the earlier outstanding balance, in a total amount of $22,181.40. Defendants failed to pay according to the schedule provided in the note. Consequently, in June of 1984, plaintiff began an action in superior court to foreclose the mortgage. Defendants sought to void the note on grounds of duress and filed a counterclaim for consumer fraud and breach of the initial renovation contract. Both parties sought attorney's fees.

The case was tried by a jury on the legal claims in 1985.[1] The jury rejected defendants' consumer fraud claim (with its ancil-

---

[1] This action mixed legal and equitable claims. They were tried together with separate factfinding by the jury and the court. See V.R.C.P. 39(d). In order to preserve the right to a trial by jury, the jury verdict came first and then the court issued findings, consistent with the jury verdict, on the equitable claim. See Reporter's Notes to 1985 Amendment, V.R.C.P. 39.

lary request for punitive damages and attorney's fees) but awarded defendants $30,130 in damages for breach of contract. In a separate verdict, the jury awarded plaintiff $23,000 damages under the October 24, 1983 agreement.[2]

Both parties filed post-trial motions, including a request by plaintiff for attorney's fees and costs. On March 14, 1986, the trial court issued findings and conclusions relating to the mortgage foreclosure. It ordered a consolidation of the two verdicts, resulting in a net award of $7,130 plus interest to defendants. The court concluded that the mortgage was discharged and dismissed the foreclosure action, denying plaintiff any attorney's fees and costs.

Plaintiff raises three grounds for appeal: that the evidence does not support the $30,130 verdict for defendants; that the court erred in dismissing the foreclosure claim; and that the court erred in denying plaintiff costs and attorney's fees.[3]

## I.

 The measure of damages when a contractor breaches a construction contract is "'the reasonable cost of reconstruction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste.'" *Van Velsor v. Dzewaltowski*, 136 Vt. 103, 105–06, 385 A.2d 1102, 1104 (1978) (quoting 5 A. Corbin, Contracts § 1089, at 485 (1964)). The jury in this case had before it an abundance of evidence going to the costs of reconstruction and completion of the renovations on defendants' house, as well as evidence going to the parties' understanding at the time of the initial contract. Although the evidence was conflicting and contested, that does not relieve the jury of its duty to determine to the best of its ability the damages due the nonbreaching party. "[D]ifficulty in

---

[2] As the award to plaintiff under the October 24, 1983 agreement was larger than the face value of the promissory note, the jury apparently understood the agreement to go beyond the limits of the note. The verdict for plaintiff is not on appeal.

[3] In their brief, defendants repeat a claim initially made in a motion to dismiss that this Court has no jurisdiction because plaintiff failed to obtain permission to appeal from the trial court within ten days of the judgment. We denied the motion to dismiss on July 23, 1986, and it is no longer before us.

computing damages does not preclude the jury from making an assessment if there is evidence from which an estimation may be made with reasonable certainty." *Lemnah v. American Breeders Service, Inc.*, 144 Vt. 568, 580, 482 A.2d 700, 707 (1984); see *Meadowbrook Condominium Ass'n v. South Burlington Realty Corp.*, 152 Vt. 16, 27, 565 A.2d 238, 244 (1989). This Court is not, of course, permitted to second-guess the jury; we must affirm its verdict "unless it appears to be clearly erroneous when the supporting evidence is viewed in the light most favorable to the prevailing party and any modifying evidence is disregarded." *Meadowbrook Condominium*, 152 Vt. at 26, 565 A.2d at 244; see *Claude G. Dern Electric, Inc. v. Bernstein*, 144 Vt. 423, 426, 479 A.2d 136, 138 (1984) (Court will sustain jury verdict where it is justified by any reasonable view of evidence). Although we are not privy to the methods used by the jury to arrive at its verdict, nor to which evidence it found credible and persuasive and which it did not, we find that the verdict of $30,130 is supportable by the evidence in the record.

Plaintiff insists that the calculation of defendants' damages must derive from a document prepared by defendants' expert witness. This document contains two lists that summarize the estimated costs to repair and complete the work in accordance with the contract. The first list, entitled "Items in contract not completed by contractor," contains four items and totals $57,800. The second, "Defective items billed—to be repaired," includes ten items and totals $16,325. Plaintiff argues that the jury had to choose one of the totals, or the sum of both, and because their award is none of these amounts, it cannot be sustained. Plaintiff further argues that only the lesser amount, $16,325, can be reconciled with the verdict for plaintiff.[4]

---

[4] We note in passing the delicacy of plaintiff's position on appeal, and the chutzpah evident in its argument. Plaintiff contends the $23,000 verdict on the note signifies that there was no fixed price contract; consequently, the $57,800 figure, representing items in the contract not yet completed, could not have been used by the jury, and therefore the $30,130 verdict lacks evidentiary support. Plaintiff's reasoning lends itself as easily to the following syllogism: that the $30,130 verdict on the initial contract proves that the note was void because plaintiff gave no consideration, promising to do only what it was already bound to do, and that therefore the $23,000 verdict

■ There are a number of flaws in plaintiff's argument. First, it is based on the untenable premise that the jury could not accept some of the items on the expert's lists while rejecting others. In fact, there were numerous theories under which the jury could pick and choose.[5] Second, defendants testified to items not included in the expert's lists. The jury may have awarded damages for some of these items.[6] Third, the jury may have held plaintiff liable for not completing the project in the *time* promised—evidence was introduced to show that time was of the essence to defendants. Any of these matters may have figured in the jury's verdict. Finally, plaintiff seeks to narrow the jury's choices based on conflicts between the verdicts. Given the various theories advanced by the parties, there are numerous ways to reconcile the verdicts without imposing substantial limits on the components of defendants' damages that the jury could recognize. In sum, this was a case in which the jury could reach virtually any amount within very wide limits.[7]

---

cannot be sustained. This argument was not made by defendants. We find, in any event, that the two verdicts are consistent, albeit in tension, and we have no cause to overturn either.

[5] The jury may have concluded, for example, that the largest item listed by defendants' expert as not completed—converting the garage into a living/dining area, at a cost of $53,000—was not contemplated in the contract, or that only a portion of that item was contemplated. Mr. Scheuer testified that by mid-June, 1983, after the main section of the house had mostly been gutted, "[t]he only work that was going to take place in the garage was the elimination of the garage doors and they were going to be replaced with windows so that at a later date the garage space could be developed as living space." He stated that earlier discussions "about the cost of developing the space in the garage . . . had been abandoned."

[6] For example, the jury considered evidence that could not be pigeonholed as defective or incomplete work, including testimony by both defendants of money spent in hiring subcontractors on their own and performing some of the work themselves, as well as evidence of numerous items that plaintiff charged at a higher price than was promised. Defendant Bryant testified that he spent approximately $10,000 "for all the subcontractors that we paid outside of Retrovest" and approximately $5,000 for items in the contract that they performed themselves. If the jury accepted these figures and added them to the total cost to repair defective workmanship as determined by defendants' expert, a figure very close to the jury's verdict is obtained.

[7] The jury must be assumed to act rationally, however. For this reason, the theory offered by defendants' counsel on appeal to justify the jury verdict is un-

## II.

The trial court consolidated the two verdicts, ordering plaintiff to pay the difference, $7,130, plus interest from the date of its judgment, to the defendants. The court, "consider[ing] itself bound by those verdicts as they apply to any facts dealing with the equitable issues," then determined that since no debt was owing to plaintiff, foreclosure was unavailable. Plaintiff contends that it retained its right to foreclose on the note because the jury found in its favor on that issue. In addition, plaintiff claims attorney's fees and costs under the note,[8] based on an affidavit filed with the trial court after the trial, in an amount of $11,175.28.

The first hurdle for plaintiff in pursuing these claims on appeal is that it appears doubtful that the jury award of $23,000 for plaintiff was based on the note itself. The court instructed the jury that they may treat the October 24 agreement as an executory contract rather than a promissory note, and the jury's verdict—larger by $3,000 than the maximum amount promised in the note—indicates that they rejected the theory that the note was the extent of the agreement. Only the note was secured by the mortgage, however; if plaintiff's verdict was not based on the note but rather on an underlying unsecured and unwritten agreement, foreclosure is not an available remedy. In addition, if this were the case, each party was properly ordered to bear its own costs. See *Anderson v. State*, 147 Vt.

---

availing. Defendants argue in their brief:

> The jury based its award of $30,130 for breach of contract on the difference between the amount contemplated by Appellees for renovation, and the amount estimated for repair and completion of the house by expert Edward Billings.

> Defendants' counsel also claims that the jury's verdict was derived by subtracting the $40,000 contemplated when the contract was entered into from the total amount of $74,125 for repair and completion estimated by Mr. Billings. This is nonsensical. Defendants had already paid the $40,000; there is no reason to subtract that amount from the costs to complete the project.

[8] The note provides: "In the event of default by Maker under the terms of this Note or the aforementioned Mortgage Deed, Maker shall reimburse Payee for costs of collection, including reasonable attorney's fees." The mortgage deed contains language to the same effect.

394, 395, 518 A.2d 360, 360 (1985) (attorney's fees not awarded "without special legal authority or as a matter of contract").

██ Even if plaintiff's verdict—or a portion thereof—had its source in the secured note, however, the trial court properly denied foreclosure. A mortgage must be discharged when the underlying debt is paid. *Island Pond National Bank v. Lacroix,* 104 Vt. 282, 294, 158 A. 684, 690 (1932). Similarly, the mortgage must be discharged when the mortgagor establishes an offset sufficient to cover the mortgage debt. See *Proctor Trust Co. v. Upper Valley Press, Inc.,* 137 Vt. 346, 348–49, 405 A.2d 1221, 1223 (1979) (consolidated judgment granted plaintiff decree of foreclosure, but set off against the mortgage note the amount of defendants' verdict on their counterclaim for fraud and deceit); 3 R. Powell, Law of Real Property ¶ 460[3][a] (1989 ed.); 1 G. Glenn, Mortgages § 52.1, at 345 (1943) (a mortgage debt can be offset by a debt which the mortgagee owes the mortgagor). Where the mortgagor establishes damages arising from the mortgagee's breach of contract exceeding the amount due on the note, the mortgagor cannot be held in default on the note. Cf. *Canton Hardware Co. v. Haller,* 142 Ohio St. 541, 544, 53 N.E.2d 509, 511 (1944) (where breach of warranty is counterclaimed by purchaser of goods in action against him to enforce installment note representing purchase price, and purchaser's damages equal or exceed amount of installments due on note, the maturity acceleration clause is inoperative and judgment in favor of purchaser operates as a credit upon the note). The debt evidenced by the secured note in this case was properly extinguished by the court order consolidating the two verdicts with a net result in favor of defendants. Simply put, there was no longer a debt upon which plaintiff could predicate an action for foreclosure.

██ Plaintiff moreover ignores the fact that "foreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation." *Merchants Bank v. Lambert,* 151 Vt. 204, 206, 559 A.2d 665, 666 (1989). Even if the two verdicts were not consolidated and the verdict for defendants somehow could not offset the verdict for plaintiff, a trial court would nevertheless be entitled to consider the broader context of this lawsuit—"the equities of the situa-

tion"—before ordering foreclosure of defendants' right of redemption.

■■ Finally, plaintiff argues that it was entitled to recover attorney's fees and costs and that when these amounts are added to defendants' liability under the jury verdict, there is a net recovery for plaintiff on which to predicate a mortgage foreclosure. See V.R.C.P. 80.1(f) (fees included in the accounting). Again, this theory presumes that the jury verdict was based on the note, an unwarranted assumption in this case. In any event, an award of attorney's fees in a mortgage foreclosure action is discretionary. Even where the mortgage deed contains an agreement on the part of the mortgagor to pay the mortgagee's attorney's fees in the event of foreclosure, Vermont provides by statute that "the court in which the complaint is brought shall allow such fee as in its judgment is just." 12 V.S.A. § 4527; see *Proctor Trust Co.*, 137 Vt. at 353, 405 A.2d at 1225 (trial court within its discretion to deny attorney's fees to plaintiff upon foreclosure, as provided for in mortgage, "where the jury had found the plaintiff chargeable with fraud and deceit"). Where the jury, after six days of sifting evidence and allocating blame, arrived at verdicts with a net result in favor of defendants, the trial court could find it unjust to alter that balance by granting the nominal "loser" a large award of attorney's fees. There is no abuse of discretion.

*Affirmed.*