## Nationwide Mutual Fire Insurance Company v. G. Thomas Gamelin, Jr.

[786 A.2d 1078]

No. 00-531

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 21, 2001

*Paul R. Bowles* of *Hill, Unsworth, Barra & Bowles, P.L.C.,* Montpelier, for Plaintiff-Appellee.

*Todd C. Hartsuff* of *Spokes Foley P.L.C.,* Burlington, for Defendant-Appellant.

**Dooley, J.** This is a mortgage foreclosure action in which defendant, G. Thomas Gamelin, appeals the superior court's decision denying him permission to appeal from the decree of foreclosure and a decision dismissing his counterclaim. Plaintiff is Nationwide Mutual Fire Insurance Company, which acquired the mortgage pursuant to a litigation settlement with the original mortgagee, Vermont Federal Bank (VFB). We conclude that the superior court erroneously denied permission to appeal and, accordingly, we reach the merits. On the merits, we conclude that Nationwide failed to show that it is entitled to a right of subrogation, and remand the matter for the superior court to reconsider, in light of our decision, whether Nationwide is entitled to be subrogated to the mortgagee's right to foreclose on Gamelin's property. We also conclude that the superior court erred in granting Nationwide summary judgment on Gamelin's counterclaim. Accordingly, we reverse and remand.

The relevant facts are convoluted and concern three lawsuits. In March 1992, Gamelin purchased from Nationwide a "Golden Blanket" homeowner's insurance policy on his residence. In November 1993, before Gamelin began serving a six-month prison term, he entered into a contract whereby a third party, Carl Albarelli, agreed to assume all financial obligations for the home, including mortgage payments to mortgagee VFB, in exchange for exclusive possession and the right to a deed after the mortgage was discharged. Upon Gamelin's release from prison, he moved into an apartment without returning to his home. Apparently, while the home was in the possession of Albarelli in November 1994, it was damaged by fire. Gamelin filed an insurance claim with Nationwide, but Nationwide denied it in January 1995 on the grounds that Gamelin did not reside in the home at the time of the fire and had made numerous misrepresentations in renewals of the policy after he entered prison, specifically by failing to disclose the mortgage to VFB, his criminal conviction, and the lease purchase arrangement with Albarelli.

In July 1995, Gamelin assigned his rights as an insured under the homeowner's policy to VFB. There is also evidence that Gamelin made a similar assignment to Albarelli in 1994. In November 1995, VFB brought suit against Nationwide (the contract case). In May 1997, in response to opposing motions for summary judgment, the superior court ruled that Gamelin's assignment of rights to VFB was valid,[1] and that Nationwide's coverage under Gamelin's policy could not be denied on the grounds that Gamelin did not reside at the insured premises at the time of the fire. The court granted summary judgment to VFB on these two points, but denied both sides summary judgment as to Nationwide's defense that Gamelin's policy was void because he failed to disclose the existence of the VFB mortgage, the agreement with Albarelli, and his incarceration. The court found that there were disputed issues of material fact with respect to the fraudulent misrepresentation defense. The court stated that Nationwide would have to prove that Gamelin intended to deceive Nationwide or that the undisclosed information materially affected Nationwide's decision to renew the policy.

While the contract case was pending, Gamelin discontinued making monthly mortgage payments to VFB, and in August 1996 VFB brought the mortgage foreclosure case now before us. Gamelin filed an answer in that case.

In late 1997, as trial in the contract case approached, Gamelin sued Nationwide for damages resulting from Nationwide's refusal to pay the claims that arose from the fire loss (the tort case). Within weeks of the filing of that case, VFB and Nationwide settled the contract case. Under the settlement, Nationwide paid VFB $150,000, and VFB's successor-in-interest eventually assigned Gamelin's mortgage deed to Nationwide. The paragraph of the settlement agreement, which is central to the case before us, reads as follows:

> 3. Paragraph 11 of the Defendant's insurance policy provides that in the event the claim by the insured is denied, the [insurer] has the option to pay the mortgagee all sums due the mortgagee and be thereafter subrogated to the rights of the mortgagee. The Defendant has elected to exercise its

---

[1] Nationwide argued that the assignment to VFB was invalid because the policy required Gamelin to obtain Nationwide's consent to assign the policy, and Gamelin never sought Nationwide's consent. The court held that the policy language did not apply to assignment of the claim against Nationwide for the fire loss. There is no indication that the Albarelli assignment came up in the VFB litigation against Nationwide.

right under this provision in its policy and accordingly, in exchange for the payment of said sum of $150,000.00, [VFB] shall assign to [Nationwide] the Promissory Note executed by G. Thomas Gamelin, Jr., together with the Mortgage Deed securing said indebtedness.

In other sections, the settlement agreement provides that the $150,000 "represents full payment of [VFB's] claims, including, but not limited to, principal, interest and other charges due the Plaintiff relative to its mortgage received from G. Thomas Gamelin, Jr.," and further provides that VFB's "efforts have resulted in Defendant honoring its insurance policy and paying the outstanding indebtedness owed on the Plaintiff's mortgage."

The tort case proceeded, and, in June 1998, the superior court ruled that Gamelin's earlier assignment of his rights to Albarelli and VFB precluded him from making claims under the policy for fire loss,[2] but did not preclude him from going forward with his tort-based claims of bad faith and consumer fraud. Nationwide was later granted summary judgment on the latter claims as well.

Meanwhile, Nationwide, proceeding as assignee of Gamelin's mortgage deed, sought to foreclose on Gamelin's residence (the foreclosure case). The superior court issued a decree of foreclosure after denying Gamelin's motion to dismiss and granting Nationwide's motion for summary judgment on Gamelin's counterclaim alleging negligent misrepresentation. In denying Gamelin's motion to dismiss, the court ruled that a provision in his insurance policy allowed for a right of subrogation, and that Nationwide had exercised that right and thus was entitled to proceed with its foreclosure action. The court then denied Gamelin's motion for permission to appeal from its decree of foreclosure.

## I.

The first issue that we must deal with is whether we have jurisdiction to consider this appeal. Section 4601 of Title 12 requires that defendant Gamelin obtain permission to appeal, but the superior court denied such permission. Thus, we can allow this appeal only if we

---

[2] We have before us only limited parts of the record in the tort case. There is no indication that Gamelin challenged the validity of the assignments in the tort case. Instead he argued that the assignments did not preclude him from litigating the insurance claim against Nationwide, an argument that the court rejected as to the contract claims.

conclude that "the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." *Vermont Nat'l Bank v. Clark*, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991).

The superior court's decision is short and cryptic: "Dispute is actually with decision in earlier case." Nationwide argues that the court's reference is to the tort case, wherein the court first dismissed Gamelin's contract claims against Nationwide because Gamelin had assigned his rights to VFB and Albarelli, and later found no bad faith or consumer fraud.

As often occurs in cases like this, we must analyze the merits, at least superficially, to review the decision denying the appeal. In our discussion of the merits below, we conclude that the superior court acted prematurely in granting Nationwide's motion for judgment of foreclosure and its motion for summary judgment on the counterclaim. This conclusion does not necessarily mean, however, that the denial of the motion to appeal was beyond the trial court's discretion. Indeed, if we were to simply review the merits to determine whether to allow the appeal, the screening function required by § 4601 would be superfluous.

But here, we have other reasons to allow the appeal. For one thing, the decision denying appeal never mentions Gamelin's attempt to appeal the summary judgment for Nationwide on his counterclaim. We must conclude that the court failed to exercise its discretion as to that appeal issue.

Further, with respect to Nationwide's rights under its settlement with VFB, we find the court's rationale to deny the appeal — "Dispute is actually with decision in earlier case." — to be untenable. Gamelin made clear that his appeal issues involve *this case*. Gamelin asserts that the court erred in determining that Nationwide could subrogate to the rights of VFB. This issue could not have been raised in the tort case and is not foreclosed by the tort case judgment.

■ Finally, we add that there is a pervasive disconnect in the rationales put forward by Nationwide and accepted by the trial court. On the merits, the court ruled that Nationwide is subrogated to the rights of VFB because of the provision of the policy allowing Nationwide to pay off the mortgagee and assume its rights. On the motion to appeal the subrogation decision, the court apparently ruled that Gamelin could not appeal because he assigned his rights to VFB — an entirely different rationale. Given the superior court's cryptic

decision and the apparent switch of rationales to one not explored or explained, we hold that the motion for permission to appeal was denied for untenable reasons. Accordingly, we reach the merits of the appeal.

## II.

On the merits, Gamelin first argues that the court erred in holding that Nationwide was subrogated to the rights of VFB. The court's decision was:

> [A] provision in an insurance policy on mortgaged property for subrogation of the insurer to the rights of the mortgagee is generally held to preclude the right of the mortgagor to have the insurance applied on the mortgage debt. . . . Thus, contrary to defendant's position, his debt was not paid. The insurance policy here provided for a right of subrogation, which plaintiff exercised, and is now entitled to proceed in the foreclosure action initiated by the bank. Accordingly, defendant's motion to dismiss the foreclosure action is denied. (citations omitted).

Gamelin contends that Nationwide is not entitled to a right of subrogation, notwithstanding its purported assignment from the bank, because the insurance company never covered the fire loss under his policy and never proved any wrongdoing on his part that would have negated coverage. Nationwide responds that its assignment from the bank was valid as a matter of law under a provision in Gamelin's insurance policy, and that, in any event, Gamelin cannot challenge the validity of the assignment here because he could have done so in the tort case and never did so.

## A.

In making the former argument, Nationwide relies on the following section of the parties' policy:

> If we pay the mortgagee for a loss and deny payment to you:
> a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
> b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Specifically, Nationwide asserts that it proceeded under subsection b. above, and that this subsection gives it a valid assignment from the bank as a matter of law.

Before directly addressing Nationwide's assertions, we note that the above clause is part of a standard mortgage clause that establishes a separate contractual relationship between the insurer and the mortgagee. The primary purpose of the clause is to give the mortgagee additional security in the event the insured mortgagor does something that invalidates the insurance policy on the mortgaged premises. See 4 L. Russ & T. Segalla, Couch on Insurance 3d §§ 65:32–65:33 (1997). Under this policy language, if the insurer pays off the mortgagee, *under circumstances where the mortgagor had no right to recover under the policy*, the insurer is entitled to be subrogated to the mortgagee's rights as against the insured. See *Auto-Owners Mut. Ins. Co. v. Newman*, 851 S.W.2d 22, 27 (Mo. Ct. App. 1993) (since insurer was adjudicated not liable to insureds under insurance policy, amount paid to mortgagee did not inure to benefit of insureds); see also *Farmers Ins. Co. v. Smith*, 957 P.2d 125, 127 (Okla. Cт. App. 1997) (insurer became subrogated to mortgagee's right to foreclose on property where insured's policy coverage had expired due to nonpayment of premiums); *Valley Forge Ins. Co. v. Ryan*, 824 S.W.2d 236, 238 (Tex. Ct. App. 1992) (because judicial determination was made that insured deliberately caused fire loss, insurer was subrogated to extent it paid mortgagee).

On the other hand, if the insured has done nothing to invalidate a policy covering mortgaged property, and will not be unjustly enriched by way of a double recovery, the insurer has no right of subrogation against the insured mortgagor. See *Valley Forge*, 824 S.W.2d at 238 (insurer's right of subrogation under mortgage clause may be asserted when payment of loss proceeds is made to mortgagee, but only when insured is not entitled to payment); see also *Wine v. Globe Amer. Cas. Co.*, 917 S.W.2d 558, 562 (Ky. 1996) (general common law rule is that insurer has no right of subrogation "until the insured has first recovered the full amount of loss sustained").

■ It is evident from the above discussion that Nationwide exaggerates the force of its standard mortgage clause in the instant circumstances. For one thing, the clause applies only when the insurer pays the mortgagee and denies payment to the mortgagor. Here, Gamelin assigned his rights to VFB, and Nationwide purportedly paid off the rights of both. Under the circumstances presented by the policy

language, Gamelin would retain his coverage claim against Nationwide.

More importantly, Nationwide is using the clause both to assume the rights of the mortgagee and to extinguish the coverage claim. In so doing, Nationwide hopes to avoid any obligation to pay for the fire loss it insured without ever proving a valid defense to coverage. We reject this position as contrary to the purpose of the clause upon which Nationwide relies. Rather, we apply the standard mortgage clause in accordance with its language, and that language does not apply to give Nationwide a right of subrogation or assignment here. See *Ulm v. Ford Motor Co.*, 170 Vt. 281, 295-96, 750 A.2d 981, 992-93 (2000) (where policy does not explicitly provide for a right of subrogation, we will not imply such a right).

### B.

Apart from the policy language itself, however, Nationwide relies upon equitable subrogation and assignment to create its rights. The main doctrine invoked is subrogation, as provided in the settlement agreement between VFB and Nationwide. Subrogation is an equitable doctrine that enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay. *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 343, 318 A.2d 659, 661 (1974). "[T]he right of subrogation is a favorite of the law, and the tendency is to extend its application" to reach a fair result. *Id.* at 346, 318 A.2d at 662.

But "[t]he subrogee must have clear equity and subrogation is defeated by countervailing equities." *Id.*; see 16 Couch on Insurance 3d, *supra*, § 222:24, at 52, 55 (2000) (principle of subrogation will be applied or not according to dictates of equity and good conscience, resting, as it does, on maxim that no one should be enriched by another's loss; principle of subrogation is a fluid concept that depends upon particular circumstances and is based on natural justice of placing burden of loss where it ought to be, without rigid rule of law). "Subrogation will not be enforced to the prejudice of equal or higher rights." *Norfolk & Dedham*, 132 Vt. at 346, 318 A.2d at 662; see *Wine*, 917 S.W.2d at 561 (because goal of subrogation is to accomplish justice between parties, great care is taken to ensure that invoking doctrine does not impair one with superior equitable rights). This is particularly true in the context of a foreclosure action, which is itself equitable in

nature. See *Retrovest Assocs. v. Bryant*, 153 Vt. 493, 500, 573 A.2d 281, 285 (1990); *Merchants Bank v. Lambert*, 151 Vt. 204, 206, 559 A.2d 665, 666 (1989) (foreclosure actions are equitable in nature, and therefore it is proper for the court to weigh the equities of the situation); see also *Gordon v. Deavitt*, 84 Vt. 59, 64, 78 A. 113, 114 (1910) ("when equity requires it the court may deny to the assignee of a mortgage a right which the mortgagee himself could have asserted").

We decline to consider for the first time on appeal whether, and if so, to what extent, Nationwide was equitably subrogated to the rights of VFB. The issue arose in the context of Nationwide's "motion for judgment of foreclosure" and Gamelin's motion to dismiss and opposition to Nationwide's motion. Because of the court's erroneous ruling that Nationwide was fully subrogated to the rights of VFB as a matter of law under its standard mortgage clause, the court never explored the relative equities of the parties, and thus Nationwide's liability for the insurance claim remains unresolved. We remand for that determination.

## C.

Notwithstanding the equities of the case, Nationwide seeks to invoke the doctrine that assignment of a mortgage during foreclosure carries with it the foreclosure. See *First Vermont Bank & Trust Co. v. Kalomiris*, 138 Vt. 481, 483, 418 A.2d 43, 44-45 (1980). We find this argument unavailing. Whether Nationwide's claimed right to foreclose on Gamelin's property is technically by way of subrogation or assignment, see *Bank of Fort Mill v. Lawyers Title Ins. Corp.*, 268 F.2d 313, 316 (4th Cir. 1959) (assignment of legal claim necessarily contemplates continued existence of claim assigned, whereas equitable doctrine of subrogation presupposes destruction of claim through subrogee's actual payment and satisfaction of claim), an "assignment creates no right greater than the equitable right of subrogation." *Id.* at 316-17; see *Wine*, 917 S.W.2d at 564 (although in abstract terms, assignment differs from subrogation, in field of insurance subrogation, distinction is academic and assignment adds nothing to rights vested in surety through subrogation; when right of insurer to subrogate is formalized by execution of express assignment, status of insurer is nonetheless that of subrogee rather than assignee).

## D.

 Nationwide argues, however, that Gamelin had no independent rights under the insurance policy after having assigned his rights as an insured to Albarelli and VFB. We do not believe that Gamelin's assignment of the insurance claim to VFB relieves Nationwide of proving that it is entitled to an equitable right of subrogation under the circumstances. See 16 Couch on Insurance 3d, *supra*, § 222:7, at 29 (burden of proving entitlement to subrogation is on subrogee). After obtaining an assignment of Gamelin's rights, VFB sued Nationwide seeking damages for the fire loss. In November 1997, VFB made a demand on Nationwide for approximately $200,000, including $90,000 for real estate damage, $30,000 for personal property damage, $10,000 for inflation and increased cost adjustment, $43,000 for prejudgment interest, and $27,000 for attorney's fees. On the other hand, as of May 21, 1996, the unpaid balance on the note securing the mortgage was $109,822, including accrued interest, with interest to continue to accrue at $23 per day. The parties settled the case in November 1997 when Nationwide agreed to pay VFB $150,000, which represented full payment of VFB's claims, "*including, but not limited to*, principal, interest and other charges due [VFB] relative to its mortgage received from G. Thomas Gamelin, Jr." (Emphasis added.) Thus, the settlement amount is very close to the sum of the amounts for the unpaid principal of the note, with interest accrued to the date of the settlement and attorney's fees.

In essence, Nationwide has paid off the note, and collection fees, but little if anything for the insurance claim. Although there has never been an adjudication that Nationwide must pay the insurance claim, the preliminary rulings regarding Nationwide's liability in the contract case had gone against Nationwide before it decided to settle the matter with VFB. Given these circumstances, Nationwide must prove that it is entitled to an equitable right of subrogation, notwithstanding Gamelin's assignment.

## E.

Nationwide also argues that Gamelin cannot now challenge the assignment because he could have done so in the tort case. We do not believe that either claim or issue preclusion from the tort case helps Nationwide. Gamelin does not challenge the validity of the assignment of the insurance claim to VFB; nor does he argue that he has any independent contract or tort claims against Nationwide that would be

resolved in this foreclosure litigation. Instead, he challenges the effect of that assignment on Nationwide's rights in this foreclosure action and the scope of the rights which VFB had when it assigned them to Nationwide. See *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 734 (1996) (claim preclusion can apply if claim was raised or could have been raised in the earlier proceeding); *Berlin Convalescent Ctr. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (issue preclusion requires that the contested issue be actually decided in the former case).

We also note that the tort case dealt with the combined effect of both assignments of the insurance claim, while this case involves the effect of only the assignment to VFB. There has been little examination in this record of the significance of Gamelin's two assignments, first to Albarelli and then to VFB, of the insurance claim. It is not clear whether Gamelin had any remaining claim to assign when he assigned the insurance claim to VFB. Indeed, Albarelli's rights are wholly unexplored because he was never made a party in the foreclosure proceeding, despite his apparent interest in the property.

Apart from Albarelli's interest, Gamelin's position is that he assigned his insurance claim to VFB in the expectation that, armed with both his rights and its independent rights, VFB would be able to obtain full payment on the mortgage, and he would hold the property free of any indebtedness, but with the responsibility of rebuilding the home after the fire damage without insurance proceeds. He argues that having to pay the mortgage debt defeats the expectation behind the assignment. The circumstances of Gamelin's assignment of the insurance claim to VFB are not developed in the record.

While the circumstances behind Gamelin's assignment of the insurance claim to VFB go to whether Nationwide should be subrogated to VFB's foreclosure rights, they may similarly raise defenses against VFB's foreclosure rights, which can, in turn, be raised against Nationwide as assignee. See *Ide v. Spencer*, 50 Vt. 293, 296 (1877) (defenses that can be raised against mortgagee can be raised against assignee of mortgagee). We also note that VFB anticipated that there might be further litigation between it and Gamelin over its use of the assignment of the insurance claim, and Nationwide expressly agreed to hold VFB harmless from such litigation. It is unclear whether VFB

is still a party in this litigation, and the court should resolve this question before attempting to resolve the merits.[3]

## III.

Because of the uncertainty over the outcome of the subrogation issue on remand, we must also address Gamelin's claim on appeal that the superior court erred by granting Nationwide summary judgment as to his counterclaim alleging negligent misrepresentation. The counterclaim alleged that in 1995 an unnamed VFB employee told his attorney that even if VFB could not obtain payment of the mortgage from Nationwide, it would look to its errors and omissions insurance policy to cover its loss. It alleged that VFB was negligent in not obtaining the insurance reimbursement from its errors and omissions policy. It sought compensatory and punitive damages because of VFB's action.

In an initial order, the superior court held that the counterclaim could be raised against Nationwide as an equitable defense in the foreclosure action.[4] The court characterized the defense as negligent misrepresentation: "the bank told defendant that its 'errors and omissions' policy would cover the property losses for which the insurance company denied coverage, and that defendant relied on this representation by discontinuing his mortgage payments, which led to the foreclosure action." In an affidavit, Gamelin amplified that he understood from his attorney that the errors and omissions policy coverage would begin once VFB filed suit against Nationwide, and that he discontinued mortgage payments three months after suit was commenced· to give the bank policy "ample time to cover said mortgage." He also indicated that he would not have assigned his

---

[3] After it signed the settlement with VFB, Nationwide entered the foreclosure litigation and filed a motion seeking "that it be joined and/or substituted with respect to the instant foreclosure only," stating that "Vermont Federal Bank remains the proper party as regards Mr. Gamelin's counterclaim." On a motion reaction form, the court checked "granted." Because the motion sought alternative actions, we cannot determine what was granted. Despite Nationwide's statement with respect to the counterclaim, VFB did not participate further in the foreclosure argument and has not participated here on appeal.

[4] The superior court's order cites to *Retrovest Assocs.*, 153 Vt. at 500, 573 A.2d at 285, in which we held that a mortgagor could use a counterclaim recovery as an offset against the debt underlying a mortgage and defeat foreclosure if the recovery was sufficient to extinguish the debt. Apparently, the court assumed that a counterclaim against a mortgagee would have the same effect against the assignee of the mortgage, and the case proceeded on that assumption. Nationwide has not cross-appealed that ruling here.

insurance claim to VFB if he had been told that the bank's policy proceeds would not cover the mortgage.

Based on the deposition of Gamelin's former attorney, Nationwide sought summary judgment on the counterclaim, arguing that any promise of bank insurance coverage of the mortgage costs was too vague and speculative to be relied upon, and that Gamelin did not rely upon it in fact. Gamelin responded mainly with the affidavit described above. The court granted summary judgment holding that: (1) the statement of the unnamed bank employee to Gamelin's attorney was "sketchy," mentioning the errors and omission policy generally as a source of coverage for the bank's loss; (2) Gamelin could not rely on such a sketchy reference because "[t]here are simply too many unknown particulars a reasonable person would need to make an informed decision"; (3) Gamelin never followed up with VFB or the purported insurance carrier to confirm coverage; (4) Gamelin allegedly relied upon the statement a year later by discontinuing mortgage payments; and (5) in an earlier motion, Gamelin claimed that he discontinued mortgage payments because he could not afford them any longer. The court concluded that, as a matter of law, Gamelin had no right to rely on the bank employee's statement, and in fact did not rely on the statement. On appeal, Gamelin argues that summary judgment was inappropriate, and that the court could not reach the result it did without an evidentiary hearing.

The standard for resolving a motion for summary judgment is whether "there is no genuine issue as to any material fact" and, if so, whether either party "is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). In applying this standard, the trial court must regard as true all allegations of the nonmoving party supported by admissible evidence and give the nonmoving party the benefit of all reasonable doubts and inferences. *Politi v. Tyler*, 170 Vt. 428, 431, 751 A.2d 788, 790 (2000). We apply the same standard on appeal. *O'Donnell v. Bank of Vermont*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997).

We conclude that the superior court struck too soon in granting summary judgment on this issue, particularly in the face of Gamelin's affidavit. Regarding whether Gamelin actually relied upon the bank employee's statement as transmitted through his lawyer, Gamelin stated that he took two actions in reliance: assignment of the insurance claim to VFB, and discontinuance of mortgage payments. The superior court looked only at the latter action, ruling that it came too late to

have been caused by the promise of insurance coverage for the mortgage payments. Gamelin's affidavit explains that he waited to discontinue payment until shortly after VFB filed suit against Nationwide, based on his understanding of when the policy coverage would commence. In light of this explanation, we cannot say as a matter of law that Gamelin failed to show reliance. In any event, the first action, execution of the assignment, occurred shortly after the alleged statement of the bank officer and is sufficient to show reliance.[5]

It is a closer question whether the court could conclude that any reliance was unjustified as a matter of law. Justifiable reliance is an objective standard. See *Limoge v. People's Trust Co.*, 168 Vt. 265, 269, 719 A.2d 888, 890 (1998). In *Silva v. Stevens*, 156 Vt. 94, 108, 589 A.2d 852, 860 (1991), we affirmed a jury instruction which defined justifiable reliance for a negligent misrepresentation claim as follows: "[p]laintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs." (Alteration in original; internal quotation marks omitted.) At the time of the alleged statement of the bank employee, Nationwide was denying coverage to VFB because Nationwide had never been notified of the existence of any mortgagee. Based on Gamelin's deposition and affidavit testimony, a factfinder could have found that Gamelin notified VFB of the omission, VFB agreed to contact Nationwide to be added to the policy as mortgagee, and VFB failed to follow up as agreed. Thus, it was not unreasonable to expect that VFB was talking with its errors and omissions policy carrier about a potential claim.

Although we agree with the trial court that the bank employee's statement to Gamelin's lawyer, if believed, is vague and sketchy, we cannot say in light of this background that the representation was obviously false as a matter of law. See *Silva*, 156 Vt. at 108, 589 A.2d at 860. Nor can we say as a matter of law that Gamelin or his lawyer should have known it was false. We also reiterate that the reliance involved included execution of the assignment, and the record is very sparse on the circumstances surrounding that act. For these reasons, we do not believe that the justifiable reliance issue could be decided on

---

[5] Nationwide argues on appeal that Gamelin failed to raise this reliance issue below. In fact, Gamelin raised it in his affidavit and highlighted it in his memorandum of law. We cannot find that it is not preserved.

summary judgment. Cf. *Limoge*, 168 Vt. at 269, 719 A.2d at 891 (factfinder should weigh evidence in determining whether there was justifiable reliance to support negligent misrepresentation claim).

*Gamelin's motion for permission to appeal the October 5, 2000 decree of foreclosure is granted; the decree of foreclosure is stricken, and the matter is remanded for further proceedings consistent with this opinion.*