STATE OF VERMONT
RUTLAND COUNTY, SS

| | | |
|---|---|---|
| THE MERCHANTS BANK, | ) | |
| Plaintiff | ) | RUTLAND SUPERIOR COURT |
| V. | ) | Docket No. S0274-97RcCf |
| CROWLEY CHEESE INCORPORATED, KENT G. SMITH GRACE G. SMITH, PETER SMITH and STEPHANIE SMITH | ) ) ) ) | |
| Defendants | ) | |

## NOTICE OF DECISION
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Motion for Summary Judgment against all defendants was filed on August 18, 1998. Defendants Crowley Cheese Incorporated (hereinafter Crowley) and Kent G. Smith (hereinafter Kent) have responded. A hearing was held before this court on October 30, 1998. Parties were given an extended period of time to file supplemental memoranda, which have been filed and considered.

Upon consideration of the Statements of Undisputed Material Fact, Statements of Disputed Material Fact, and Memoranda of Law, the court rules as follows on each of the causes of action included in the Motion:

1

## CLAIMS AGAINST DEFENDANT CROWLEY CHEESE INCORPORATED

Count I. Breach of Settlement Agreement
Count II. Breach of Promissory Note

As to these two claims, there are no disputes of material fact. Crowley has failed to comply with the terms and conditions of the Settlement Agreement and the Promissory Note in the amount of $250,000.00 by failing to make payments when due and upon demand. Crowley argues that the affidavits submitted in support of plaintiff's motion do not state that they are based on personal knowledge. The statements made in the affidavits are sufficient to show that each affiant was basing the statements on personal knowledge. The failure to so state does not constitute a basis for disregarding the affidavit where the content shows that the standard was met.

Crowley argues that the plaintiff failed to monitor its loan to Crowley and that such failure contributed substantially to Crowley's financial deterioration and materially hampered Crowley's ability to cure the defaults. Crowley relies on the term of the Security Agreement that requires Crowley to periodically file tax returns and financial information with Plaintiff. Crowley argues that Plaintiff did not ask on an ongoing timely basis for tax returns and financial information about Crowley to be turned over to Plaintiff and hence violated a duty of care owed by the Plaintiff bank to Crowley. By its terms, the obligation to provide information was a right held by the bank for its own benefit. The provision does not support the attenuated interpretation that it created a legal duty on the part of the bank to anticipate possible deterioration of Crowley's business, and warn Crowley at an early date about its own problems. The court agrees with the argument set forth on pages 9-10 in Plaintiff's Reply to Defendant's Opposition to Motion for Summary Judgment, filed October

2

23, 1998. The circumstances of this case are unlike those in <u>Proctor Bank v. Pomfret Farm Limited Partnership</u>, S145-91WrCf Feb. 4, 1994, and <u>Merchants Bank v. Lambert</u>, 151 Vt. 204 (1989) in which specific facts determined the mortgagor's obligations to a junior mortgagee and a mortgagor. Crowley cannot complain that its financial troubles were primarily due to the bank's decision not to insist on timely filing of periodic financial update information. That information was available to Crowley, which bore responsibility for monitoring and analyzing its own financial viability.

Crowley further claims that plaintiff bank breached an implied covenant of good faith and fair dealing by not requiring Crowley to return the Hatch House to Crowley after Crowley had conveyed it to Grace Smith in November of 1993 without obtaining the bank's consent. At the time of the conveyance of the Hatch House from Crowley to Grace Smith, the Hatch House was subject to a second mortgage to the bank pursuant to the Settlement Agreement. Under ¶¶ 7 and 17 of the mortgage held by the bank, the bank had the right to invoke protections available to it, but no obligation to do so. Section 14 of the Settlement Agreement constitutes a separate paragraph specifying that the purpose of the Hatch House mortgage is to provide additional security to the bank. The bank's security interest was unimpaired. The allegation that the bank had an obligation to require Crowley to pursue return of the Hatch House property is without factual or legal support. The same analysis applies to the claims that the bank had an obligation to require the conveyance of the Barber property to Crowley.

Plaintiff is entitled to Summary Judgment as to liability on Counts I and II.

3

Count V. Foreclosure on Cheese Shop Property (First Mortgage)
Count VI. Foreclosure on Cheese Shop Property (Second Mortgage)
Count VII. Foreclosure on Cheese Factory Property

As to these counts, there are no disputes of material fact. The mortgage deeds were conditioned on timely payment of principal and interest in the Crowley note, which was modified by the Settlement Agreement. Crowley failed to comply with the terms and conditions of the Crowley note and Settlement Agreement by not making timely payment of principal and interest. Crowley received notice of default and did not cure the default. Summary judgment as to liability is granted to the plaintiff on these counts.

Count XIII. Replevin Against Crowley

There are no undisputed material facts as to this count. The issue is one of law. Crowley admits that it executed a security agreement in connection with the original 1987 Promissory Note, and another one in 1993 in connection with the 1993 Settlement Agreement. In both security agreements Crowley granted the plaintiff a security interest in various specified items of personal property. Crowley has failed to comply with the terms and conditions of the security agreement by failing to make timely payments on the Crowley note. Plaintiff is entitled to summary judgment on this count.

**CLAIMS AGAINST KENT SMITH**

Count I. Breach of Settlement Agreement

With respect to this count there are no undisputed material facts. Kent Smith executed and delivered to the plaintiff the 1993 Settlement Agreement in which he reaffirmed direct obligations to the Plaintiff as well as his obligation as guarantor of the Crowley note. Kent Smith has not made timely payment on his obligation specified in the

Settlement Agreement. Crowley failed to make timely payments under the Settlement Agreement Kent Smith has defaulted on his obligation as guarantor under the Settlement Agreement.

Kent Smith argues as a defense that the Plaintiff's behavior prior to and subsequent to the filing of the complaint constitutes a breach of the covenant of good faith and fair dealing, specifically with reference to its refusal to subordinate the Brownstone mortgage and its failure to provide adequate notice under the Barber mortgages. The issue of the Barber mortgages is resolved below. The bank's refusal to subordinate the Brownstone mortgage may have given rise to a potential claim and may affect the calculation of attorney's fees in determining the amount due. It does not, however, defeat liability altogether where the undisputed material facts show a failure to make payments on the Settlement Agreement and underlying obligations.

Kent Smith further defends on the ground that the plaintiff bank failed to continue its 1987 security interest in all inventory and therefore unjustifiably impaired the value of collateral available to it. The undisputed facts show quite clearly that a very specific term of the 1993 security agreement was that the bank would not have a security interest in inventory or proceeds after January 24, 1992. Therefore, the fact that the bank did not continue its 1987 security interest in such collateral does not constitute impairment of the value of collateral. It had no obligation since the explicit terms of the Settlement Agreement provided that it would not have a security agreement in such collateral.

Plaintiff is entitled to Summary Judgment as to liability on this count.

| Count III. | Breach of Promissory Note ($18,000.00) |
| Count IV. | Breach of Promissory Note ($47,934.58) |

There are no undisputed facts with respect to these counts. Kent Smith executed and delivered each of these promissory notes. The obligations under the notes became part of the Settlement Agreement, which he also executed, and under which he is in default. Plaintiff is entitled to summary judgment as to liability on these counts.

| Count IX. | Foreclosure on Barber Property (First Mortgage) |
| Count X. | Foreclosure on Barber Property (Second Mortgage) |

With respect to these counts there are no undisputed facts. Kent Smith executed and delivered to plaintiff a first mortgage deed on the Barber property and a second mortgage deed on the Barber property. Both mortgage deeds are standard FNMA form mortgages and set forth the obligations of the lender in the event of default, including the requirement to give certain notices to the mortgagor prior to acceleration of the note. Specifically, in ¶ 19 of the August 7, 1987 mortgage and in ¶ 19 of the September 28, 1987 mortgage, the plaintiff was required to give specific notices to the borrower and an opportunity to cure prior to acceleration. The notice is to specify: (1) the default, (2) the action required to cure the default, (3) a specific date not less that thirty days by which the default must be cured, (4) and the fact that failure to cure default on or before the date specified in the notice may result in acceleration of the sum secured by the security instrument and sale of the property. The notice must also inform the borrower of the right to reinstate after acceleration and certain other rights. After such notice, the lender has the right to accelerate the full balance of sums due secured by the mortgage without further demand if the default is not cured on or before the date specified in the notice.

Crowley failed to make payments as required under the Settlement Agreement in March of 1997. On April 9, 1997 plaintiff wrote to Kent Smith giving notice of Crowley's default as required under the Settlement Agreement. This was a two page letter that appears as Exhibit 27 to Plaintiff's Motion for Summary Judgment.

After giving notice of the nature of the default and making reference to a similar notice to Crowley, which provided for a 15 day period to cure, the letter states, "if the defaults are not cured in accordance with the default notice sent to Crowley Cheese Inc. on even date herewith, then the bank will seek repayment of all amounts due from you, as guarantor." This notice was insufficient to satisfy the bank's requirements and prerequisites to acceleration and foreclosure as set forth in ¶ 19 of the two Barber mortgages. While it was sufficient notice under the Security Agreement, it did not trigger the bank's right to accelerate as a basis for foreclosure on the Barber property.

Plaintiff bank argues that the terms of the Settlement Agreement superseded the provisions in the mortgage instruments on the Barber property. The Court concludes as a matter of law that this is not so. The Settlement Agreement contained certain terms and requirements of its own. It did not, however, by its terms alter or eliminate rights of the borrower under any of the several security instruments to which it referred, and upon which it depended for implementation. These included the Barber mortgages. In order to foreclose on the Barber mortgages, Plaintiff was obliged to fulfill the requirements set forth in ¶ 19 prior to acceleration of the loan.

Plaintiff bank argues that even if the April 9, 1997 notice provisions were deficient, it provided supplemental notice of default by its letter of May 27, 1998. (Exhibit 29 to

7

Plaintiff's Motion for Summary Judgment). The bank's May 27, 1998 letter makes specific reference to ¶ 19 in the Barber mortgages and specifically states that the bank is making demand upon Kent Smith to repay all amounts owed under the Settlement Agreement within thirty days from the date of this letter. It further states, "you must call me to obtain the amounts owed." The letter did not contain a specific sum due or required to cure. When Kent Smith sought to comply, he was informed that the bank was requiring not only the sums due under the promissory note but $40,000.00 worth of attorney's fees that the bank had incurred in the intervening year (April 1997 to May 1998), including after filing this foreclosure action.

The Court concludes as a matter of law that the notice of May 27, 1998 was insufficient for three reasons. First, it does not give clear notice of the "action required to cure the default" in that it merely states to Mr. Smith that he must call the bank to find out how much the bank says he owes. The purpose of the ¶ 19 notice requirement is to give actual notice of the specific steps the mortgagor must take in order to avoid acceleration, e.g., how much money must be paid. The fact that the mortgage was securing a guaranty on a complex matter does not eliminate this requirement. The bank chose to accept a FNMA mortgage instrument that entitled the mortgagor to explicit notices prior to acceleration. The bank cannot ignore these requirements simply because other mortgages that secured the same obligation did not have that requirement. This is not a matter of elevating form over substance. If the court were to endorse such a policy, mortgagors and mortgagees would never know whether or not the terms in their instruments actually mean anything in terms of substantive rights, and predictability of outcome is extremely important

8

in facilitating commercial transactions.

Secondly, plaintiff improperly claimed $40,000 worth of attorney's fees. The bank wrote to Kent Smith on June 23, 1998 (Exhibit B to Kent Smith's Affidavit in Opposition, filed October 6, 1998) in which it claimed $40,173.25 in attorney's fees in order to reinstate. It relied on ¶ 18, which gives the mortgagee the right to expenses incurred "in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees." Attorney's fees incurred in enforcing a mortgage are not reasonable if they are incurred in a foreclosure action before the bank has given the notice required by ¶ 19. The right to claim attorney's fees as a condition to reinstatement arises only after acceleration has been accomplished under ¶ 19, and this can only take place after the ¶ 19 notice and opportunity to cure. Interestingly, in the June 23, 1998, letter, the bank, which had not yet given the notice required in ¶ 19 and was apparently for the first time providing notice of the amount of payment needed to cure, stated that it "is not willing to extend the thirty (30) day reinstatement period provided to you via two (2) specific mortgage deeds." The bank acknowledged its lack of compliance with the ¶ 19 prerequisite to acceleration and foreclosure under the mortgage. The provision in ¶ 18 relied on by the plaintiff does not give the bank the right to include attorneys fees incurred in foreclosure litigation, commenced prematurely because the bank failed to give proper notice prior to acceleration, in the amount necessary to cure under ¶ 19. The protections to the borrower contained in ¶ 19 of a FNMA mortgage would be nonexistent if the court permitted a bank that gave insufficient notice to file a foreclosure, pursue it for a year, add its litigation expenses to the amount needed to cure, and then give notice of an amount needed to cure to avoid

9

acceleration that included all of the litigation expenses.

Third, the notice states that if all indebtedness is not paid, "the obligations will remain accelerated," yet under the terms of the mortgage, the time for acceleration was not yet ripe. For the foregoing reasons, the Plaintiff has not yet met the prerequisite to foreclosure contained in the mortgage instruments, and Plaintiff's Motion for Summary Judgment is denied as to Counts IX and X related to foreclosure of the Barber mortgages.

An issue has been raised that is moot at this point, but will arise again when the bank gives proper notice, so it will be addressed here. At such time as ¶ 19 notice is given, the amount needed to cure may include all amounts due to date, and not just one month's payment, as was tendered by Kent Smith after the faulty May 1998 notice. It is the amount that would be necessary to bring the obligation current up to the time of the proper notice given.

### Count XI. Breach of Guarantees

There are no undisputed facts. Kent Smith delivered a guaranty in 1987 to plaintiff guaranteeing payment of the Crowley note, and delivered to Plaintiff a guaranty in 1993 guaranteeing repayment under the terms of the Settlement Agreement. Crowley failed to make timely payments under the Settlement Agreement and has defaulted on the Settlement Agreement. Plaintiff is entitled to summary judgment on Count XI based on the undisputed facts.

## CLAIMS AGAINST GRACE SMITH

### Count VIII. Foreclosure on Hatch House

The Plaintiff's Motion also seeks judgment against Defendants Peter and Stephanie

10

Smith, who may or may not still be tenants in the property. Neither Grace Smith nor Peter nor Stephanie Smith have filed any opposition to Plaintiff's Motion for Summary Judgment. The Plaintiff now seeks to dismiss this count against Grace Smith and substitute the current owner. Since none of the material facts have been disputed by the named defendants, the plaintiff's facts support Summary Judgment as to Peter and Stephanie Smith only. Plaintiff's Motion to Substitute Lucinda S. Hughey-Wiley, filed January 15, 1999, is granted with respect to this count, but she has not yet been served. This count against Grace Smith is moot as a result of Plaintiff's Motion to Substitute.

<u>Count XII.</u> Breach of Guarantees

There are no undisputed facts. Grace Smith executed and delivered to plaintiff the instrument in which she guaranteed repayment of the Crowley note. Crowley has defaulted on its note and Settlement Agreement. Summary judgment is granted as to Count XII.

**OTHER**

With respect to the counts on which Plaintiff's Motion for Summary Judgment is granted, summary judgment is granted as to liability only. A hearing will be scheduled on the determination of amounts due. V.R.C.P. 56 (c)(3), V.R.C.P. 80.1(d).

The issue has been raised in the memoranda about whether foreclosure actions against certain properties can proceed consistent with the requirements of the Settlement Agreement that liquidation and sale of the properties take place in a specified order. Under Section 6 (iv) of the Settlement Agreement, the plaintiff bank has the right to "initiate and prosecute all proceedings that it deems reasonably necessary to protect and enforce its rights and remedies with respect to such collateral and security, in whatever

11

order it deems proper," but "the liquidation and sale of such collateral and security shall be in the following order and priority..." The plaintiff may proceed to obtain judgment as to amounts due on the notes, Settlement Agreement, and guarantees, but all foreclosure and sale orders must be coordinated to provide for an orderly liquidation process in the order specified in Section 6 of the Settlement Agreement. Since the first property to be liquidated and sold is the Barber property, Plaintiff will need to obtain a judgment order to foreclose the Barber property, or otherwise obtain the right to liquidation and sale of the Barber property, prior to the issuance of any order specifying redemption and sale dates with respect to the other properties on the priority list.

Other outstanding motions of the parties are ruled upon this day on entry orders.

The Court will schedule a status conference to sort out pre-trial procedures and establish a pre-trial order. If the attorneys are able to accomplish this without a conference with the Court, a stipulation may be filed.

Dated at Rutland, County of Rutland State of Vermont this _18_ day of February, 1999.

_____
Hon. Mary Miles Teachout
Presiding Superior Court Judge